In re Frank **ROBISON**, Respondent.

No. 58418.

Supreme Court of Missouri,
En Banc.

Jan. 13, 1975.

Rehearing Denied March 10, 1975.

John O. Bond, Jefferson City, for respondent.

PER CURIAM.

The Nineteenth Judicial Circuit Bar Committee filed an information in this court against respondent Frank Robison alleging that respondent violated Rule 4, The Code of Professional Responsibility, V.A.M.R., in that respondent in November 1971, received the sum of $1200 from Roger _____ and William _____ to be used by respondent to settle a claim against Ronald _____ (brother of Roger), but that respondent misappropriated said sum given to him in trust by commingling it with his own money and using said sum for his own personal living expenses. The prayer of the information is that respondent be disbarred. The procedural requirements of Rule 5 were complied with prior to the filing of this information.

The court appointed Honorable Richard Jensen as Master with power, authority, and duties prescribed by supreme court rules. An evidentiary hearing was held at which respondent was present and represented by counsel. The Master filed his report containing findings of fact, conclusions of law, and his recommendations in this court. The Master found and concluded that respondent received the sum of $1200 as a trustee, which was to be used by him to settle a claim against his clients but that respondent appropriated said sum for his personal use and thereby violated DR 9–102(A), (B)(2)(3) and (4) of Rule 4.

1

The court has reviewed the record and concludes that the findings made by the Master are fully supported by the evidence and are adopted by the court.

The substance of the findings of fact are as follows. In November 1971, respondent was contacted by Ronald _____ and Roger _____ concerning a claim against Ronald by a grocery store for whom Ronald worked. The grocery store claimed that Ronald had given cash discounts totalling $1200 to certain persons, apparently his brother William and a friend, Roger _____, as he would check their purchases out at the store. Respondent agreed to represent Ronald, and Ronald and Roger paid him $150 as an attorney fee. Respondent told Ronald and Roger that they should give him $1200 in order that respondent would have the money available in order to settle the grocery store claim. The three young men were concerned about possible criminal charges and wanted the matter concluded as quickly as possible. Roger and William borrowed $1200 and delivered it to respondent. Respondent advised them he would use as much as was necessary to settle the claim and gave them a receipt which stated, "Received of Roger _____ and Wm. _____ $1200 as trustee to be used as I see fit in a possible lawsuit against them. Frank Robison." [1]

Respondent contacted certain persons at the grocery store; discussed the matter with them, and offered $400 to settle the claim. That offer was refused.

In March 1972, the grocery store filed suit against Ronald in magistrate court for $1200 actual and $800 punitive damages. Respondent entered his appearance as attorney for the defendant Ronald; discussed the case with the attorney for plaintiff store, and offered $500 in settlement, which was refused. The case was continued several times and finally set for trial again for May 26, 1972. Respondent was notified of the trial date but he did not appear and default judgment was taken against his client for the prayer of the petition.

Respondent did not notify Ronald of the judgment. In June 1972 an execution and garnishment was issued against Ronald's salary at his new place of employment. Ronald contacted respondent and was told the judgment was not valid because Ronald was a minor and no guardian ad litem had been appointed. Ronald asked respondent about the $1200 and, according to Ronald, respondent said he had used some of the money for bribes and some for expenses and that it was all gone. There is no other indication any money was used for bribes and the court finds that it was not so used. The attorney for the grocery store released the execution and garnishment when he learned of Ronald's minority but the grocery store's claim against Ronald is still pending.

The Master found, as do we, that respondent received the $1200 in trust for the purpose of settling the grocery store claim against Ronald; that respondent did not use the money for that purpose; that respondent appropriated the money to his personal use and did not account to his client therefor.

Ronald, Roger, and William were still making payments on the $1200 as of the time of the formal hearing in this case and respondent has made no effort to make restitution.

Respondent admits receiving the $1200 and giving the receipt noted supra. Respondent testified that the purpose of the $1200 "was to try to get some kind of settlement with that grocery store". He contends that the agreement he had with the three young men was that whatever he saved out of the $1200 on a settlement would be kept by him as attorney fee; that he offered $400 and then $500 in settlement but the offers were refused; that his client was principally concerned about the

---

[1]. Further identification of respondent's clients and others involved in this matter is omitted as not necessary to the decision on the merits in this case.

possibility of going to jail; that respondent was successful in keeping his client out of jail and therefore he was entitled to the $1200 as his attorney fee.

Ronald testified that he understood that if respondent were able to settle the claim for less than $1200 the balance would be divided equally between respondent and the three boys with each person receiving one-fourth. William testified that he and Roger delivered the $1200 to respondent and took the receipt noted supra and discussed a possible settlement. Roger testified, "We explained to Mr. Robison that, you know, that he could go ahead and take the money and do anything to keep us, you know, from going to jail, but we were especially concerned if there was to be some money left, you know, what would be done with that. We explained to him that if he could settle this matter out of Court, that he would be paid an additional small attorney fee of approximately $50 to $100, in excess of the $150 that we had already given him."

Thus it appears that if respondent had successfully settled the claim for less than $1200 he would probably have received some additional attorney fee. This, however, does not alter the fact that the $1200 was originally deposited with respondent to effect a disposition of the grocery store claim against his client and not as an attorney fee.

Respondent contends that "the final agreement was that his attorney fee would be everything he saved his client which at this point in time appears to be $1200.00", and that "he believed he had saved his clients $1200.00 and was entitled to it as an attorney fee."

These contentions simply beg the question. The fact is that respondent was not given the $1200 as an attorney fee, and his client's liability, if any, to the grocery store still exists. Respondent admittedly spent $350 of the $1200 before the suit was filed against Ronald and subsequently spent the remainder, all for his own personal needs.

The issues in this case do not involve the propriety or adequacy of respondent's representation of his clients per se but are solely concerned with the expenditure of the $1200 by respondent for his personal use.

The transgression committed by respondent is a serious one and, as noted supra, respondent has made no effort to restore the funds. He attempts to justify this by his asserted belief that he was entitled to the money as an attorney fee. More important than the failure to make restitution however, is the persistent and continuing attitude on the part of respondent that the funds placed with him by his clients in the matter could be properly spent by him for his personal use and that he was not required to use these funds solely for his clients' benefit and for the specific purpose for which he received the funds—to settle the grocery store claim and thereby hopefully conclude his clients' legal problems. Although the receipt given by respondent to his clients with the words that the money was to be used by him as he "saw fit in a possible lawsuit against them" would appear to allow for the use of the funds other than solely for the payment of a settlement sum to the grocery store, it is clear beyond doubt that the authorized use of the funds did not include the personal living expenses of respondent and was restricted to a use that would benefit the clients in the matter he was retained to handle for them.

The court finds that respondent received $1200 from his clients in trust for the purpose of settling the grocery store claim in behalf of his clients; that said sum was not given to respondent as an attorney fee; that respondent improperly appropriated his clients' funds to his own use in violation of Rule 4 DR 9–102.

The court has considered the character evidence offered in behalf of respondent as well as all other evidence in the case. The

misappropriation of a client's funds is a very serious matter, as lawyers are frequently called upon to care for or hold in trust monies and property of those people they represent. Consequently, the court has concluded that disbarment is the appropriate discipline in the instant matter.

It is ordered that Frank Robison be disbarred, that his right and license to practice law in this state be cancelled and terminated unconditionally, and that his name be stricken from the roll of attorneys in this state.