**In re Terrence J. LECHNER, Respondent.**

**No. 65319.**

Supreme Court of Missouri, En Banc.

July 15, 1986.

Rehearing Denied Sept. 16, 1986.

Concurring Opinion of Blackmar, J., Sept. 16, 1986.

Richard P. Sprinkle, Lawrence M. Berkowitz, Kansas City, for Bar Committee.

William F. O'Sullivan, Kansas City, for respondent.

PER CURIAM:

This is a disbarment proceeding instituted by The Bar Committee of the Sixteenth Judicial Circuit by the filing of an information against the Respondent, Terrence J. Lechner, which charged him with misconduct, as follows:

## COUNT I

\*   \*   \*   \*   \*   \*

A. That in or around August of 1979, Terrence J. Lechner was notified that Brenda Gilpin, who previously had retained Terrence J. Lechner to represent her children in pursuing their personal injury claims, was terminating employment of said Terrence J. Lechner and that in spite of such notification and the receipt of a written request from Brenda Gilpin as well as written and oral requests from successor counsel, Walter R. Simpson, that Terrence J. Lechner turn over to Mrs. Gilpin or Mr. Simpson the file concerning the claims of Mrs. Gilpin's children, Terrence J. Lechner failed to turn over the files to Mrs. Gilpin or Mr. Simpson, contrary to DR1–102(A)(1), DR2–110(B)(4), DR2–110(A)(2) and DR9–102(B)(4), Rule 4 of the Missouri Supreme Court.

B. That between December 8, 1979, and July 29, 1980, Terrence J. Lechner, on behalf of his client Marjorie Cunningham, failed to take those steps necessary to obtain entry of a decree of dissolution of her marriage and to respond to her

inquiries as to why said decree was not entered. Such failures constituted the neglect of a legal matter entrusted to Terrence J. Lechner, the failure to seek a client's lawful objective through reasonably available lawful means and the failure to carry out Terrence J. Lechner's employment contract without properly withdrawing, such conduct being contrary to DR1–102(A)(1), DR6–101(A)(3), and DR7–101(A)(1) and (2).

## COUNT II

\* \* \* \* \* \*

That in 1981 Terrence J. Lechner represented Norma O'Brien and her husband, George O'Brien, in a personal injury suit. That Farm Bureau Town and Country Insurance Company of Missouri, which insured the alleged tortfeasor, William C. Walker, paid $8,000.00 as settlement for Mrs. O'Brien's claims against Mr. Walker. That the United States was entitled to the sum of $1,292.80 of the settlement proceeds in repayment of the costs of treatment extended to Mrs. O'Brien by the United States Army as a result of her injuries. That the settlement draft was made payable to Mr. and Mrs. O'Brien, the Treasury of the United States, and Terrence J. Lechner, Attorney at Law. That in December of 1981 the Office of the Staff Judge Advocate, Fort Leavenworth, endorsed the $8,000.00 settlement draft provided to it for endorsement by Terrence J. Lechner based upon Terrence J. Lechner's written promise made in his letter of December 10, 1981, to remit a check to the government in the amount of $1,292.80 upon clearance of the draft. That although letters were written to Terrence J. Lechner, including letters dated April 6 and 19, 1982, which were sent by an Assistant United States Attorney, and telephone calls made to Terrence J. Lechner's office seeking payment of the amount owed, the sum owed to the United States from the settlement draft was not paid. That on April 16, 1982, suit was filed against Terrence J. Lechner in the United States District Court, Western District of Missouri, by the United States, in two counts, seeking $1,292.80 plus interest and $10,000.00 punitive damages. That Terrence J. Lechner was served, but failed to file an answer, and on August 16, 1982, the United States District Court for the Western District of Missouri entered default judgment against Terrence J. Lechner for the sum prayed. That, at the time of the formal hearing, none of the judgment had been satisfied. That such conduct constituted professional misconduct and the neglect of a legal matter entrusted to Terrence J. Lechner, contrary to DR1–102(A)(1), (4), and (6); DR6–101(A)(3); DR7–102(A)(8); and DR9–101.

Respondent admitted that he committed the acts alleged in Count I of the information but pleaded in mitigation "that his actions during the relevant period were due to stress occasioned by a break-up of the marriage of Respondent, change in employment, and certain other health problems which he experienced during said time."

Respondent admitted that he committed the acts alleged in Count II of the information but pleaded "that he did not intentionally commit acts that were either dishonest, fraudulent, deceitful, or to misrepresent himself to others \* \* \* [and] \* \* \* that he at no time knowingly engaged in any illegal conduct contrary to a Disciplinary Rule."

The Honorable Ben W. Swofford, Master, found, as to Count I, that Respondent was guilty of "neglect as to his clients \* \* \*." *In Matter of Alpers*, 574 S.W.2d 427 (Mo. banc 1978). The Master found, as to Count II, that Respondent was guilty "of serious professional misconduct in the handling of the O'Brien-United States settlement funds \* \* \*." *In re Oliver*, 365 Mo. 656, 285 S.W.2d 648, 655 (1956).

The recommendation of the Master is as follows:

It should be \* \* \* noted that this record is devoid of any proof that the respondent acted during the period of time here involved and the matters under consideration with any illegal or criminal

motive or with intent to defraud or for personal enrichment. If any such conclusion is reached, it would of necessity be based solely upon circumstances, speculation and conjecture. A more sound and reasonable basis would be that Respondent suffered from a severe mental illness of a psychological origin brought upon by stress. He is a comparatively young man with a good future in the law profession when and if these disabilities are eliminated. Some discipline short of disbarment is justified in the view of the Master.

The Master, therefore, recommends to the Court that the Respondent, Terrence J. Lechner, be suspended indefinitely from the practice of law with leave to apply for reinstatement after a period of six (6) months from the date of the court's opinion herein upon a showing that he is a person of good moral character, fully qualified to be licensed as a member of the Bar of Missouri, and is recovered from any mental illness or physical problems from which he suffered during the time frame of this proceeding.

In *In re Mentrup*, 665 S.W.2d 324, 325 (Mo. banc 1984), it was stated that "the paramount objective of the Court in cases such as this is to protect society and maintain the integrity of the legal profession." That objective is best served in this case by disbarment.

Respondent is disbarred and his name ordered stricken from the roll of attorneys of this state.

HIGGINS, C.J., and BILLINGS, WELLIVER and RENDLEN, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

DONNELLY, J., dissents in separate opinion filed.

ROBERTSON, J., dissents and concurs in separate opinion of DONNELLY, J.

BLACKMAR, Judge, concurring.

I concur in the *per curiam.* I cannot distinguish this case from *In re Williams*, 711 S.W.2d 518 (Mo. banc 1986).

This respondent received a settlement check payable to himself, his client, and the United States. He prevailed on the United States to endorse the check in blank by giving an express written promise to remit the government's share promptly.[1] He then converted that share to his own use, after cashing the check. He gave no explanation whatsoever for this conduct either before the Circuit Bar Committee or in this Court. The argument that marital problems and emotional stress caused him to take money that did not belong to him is unconvincing.

His action constitutes a civil fraud and very probably a criminal fraud also. It makes no difference that the converted funds belonged to another interested party rather than to the client.

At one time this Court imposed suspensions in disciplinary cases. More recently we have taken a firm position that misappropriation of funds calls for disbarment. *In re Mentrup*, 665 S.W.2d 324 (Mo. banc 1984). A suspension for dishonesty does not make sense. The purpose of disbarment is not punishment but rather the protection of the public. A person who cannot be depended on in the handling of legal business should be disbarred; one who remains worthy of trust, in spite of some transgressions meriting discipline, should be allowed to continue his practice without interruption.

The Master's recommendation as to the appropriate discipline is not binding on us. We should follow our present established policy. I am concerned that the Master's report did not reach us until more than two years after he was appointed, but, because of the seriousness of the offense, I still believe that our order should be for disbarment.

The respondent argues in his motion for rehearing that the offense charged in

---

**1.** I doubt that the government will ever again accommodate a lawyer in this manner.

Count II consists solely in failing to fulfill a promise to the United States government by not paying over moneys due and owing it. This contention is refuted by the record. The respondent was in possession of a check payable to himself, his client, and the United States. He secured the government's endorsement only through a letter of transmittal stating as follows: "Upon clearance, I will remit a check to the government in the amount of $1297.80." Having thus been empowered to negotiate the draft, he had no authority to do anything else with the government's share of the proceeds. Instead he converted them to his own use. The United States never agreed to become his creditor. We do not have to decide whether his action would constitute a violation of the criminal law. There was a clear misappropriation of funds belonging to another.

DONNELLY, Judge, dissenting.

In *In Matter of Alpers*, 574 S.W.2d 427, 428 (Mo. banc 1978), this Court declared that "[d]iscipline of an attorney may be effected by disbarment, suspension or censure. Disbarment is an extreme measure of discipline and should be resorted to only in cases where the lawyer demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards. To disbar it should be clear that he is one who should never be at bar; otherwise suspension is preferable. * * *."

I would follow the recommendation of the Master. I respectfully dissent.