In re Mark E. REZA, Respondent.

No. 68793.

Supreme Court of Missouri,
En Banc.

Jan. 20, 1988.

Tim E. Dollar, Kansas City, for informant.

Louis C. Accurso, Kansas City, for respondent.

BLACKMAR, Judge.

We adopt the findings and conclusions of our Master, The Honorable Channing Blaeuer, Judge of the 14th Judicial Circuit. Rather than repeating or summarizing, we append his report to this opinion. It is now up to us to decide upon the appropriate sanction.

The Master recommends a suspension for a "significant" period. We have recently recognized suspension as appropriate for cases which involve substantial professional misconduct but in which there may be circumstances under which the respondent might be permitted to return to the practice at some future time.[1]

■ The respondent has been a member of the Missouri Bar since April 24, 1976. The facts set out in the Master's report indicate serious problems, which the respondent must correct before he may be permitted to handle the legal business of others. When a single charge of professional neglect is made the matter is usually more appropriate for a civil action than for a disciplinary proceeding. Here, however, there was not only a failure to take the elementary step of filing a suit to establish a lien within the time allotted, but a series of misleading statements to the client about the progress of the matter. His neglect of his own interests by failing to respond to the correspondence from the Bar Committee, and failing to file the brief in this court within the time allowed,[2] casts doubt on his ability to represent others. The failure to pay an annual enrollment fee for several years running, and his continuing to practice law even though the Bar Committee warned him of his automatic suspension, are also serious matters. The Master aptly observes that the several incidents demonstrate a pattern which is cause for grave concern.

The respondent, through his counsel, admits that he has been at fault and promises

1. *In re Littleton,* 719 S.W.2d 772 (Mo. banc 1986); *Matter of Dorsey,* 731 S.W.2d 252 (Mo. banc 1987); *In re Adelman,* 734 S.W.2d 509 (Mo. banc 1987).

2. The respondent did not retain counsel until the week before the case was set for argument. His counsel's efforts, within the short time allowed him, have been helpful to us.

to make correction if given the chance. He has tendered his annual enrollment fee through 1988. He represents that he has not practiced law after his violation of suspension was brought out during the hearing in April of 1987 before the Master. We are not willing to allow the respondent to resume practice without sanction, or without demonstrating affirmatively that he understands his responsibilities as attorney and counselor and giving assurance that there will be correction of the problems which have brought him to his present situation.

The respondent is suspended indefinitely from the practice of law, with leave to apply for readmission no earlier than six months following the publication of this opinion. In fixing the time we have considered the nine months in which he has not practiced. Reinstatement will be granted only on affirmative showing as indicated in the preceding paragraph, and demonstration of continuing good character.

All concur.

## APPENDIX

### MASTER'S FINDINGS AND RECOMMENDATIONS

#### Sept. 3, 1987

Information Under Rule 5 in three Counts was filed herein by the Circuit Bar Committee for the 16th Judicial Circuit, Division Two, on November 7, 1986. Summons was issued by certified mail on November 10, 1986, and Respondent was served on November 11, 1986. Respondent filed his Answer on December 10, 1986. Order appointing Master was entered December 15, 1986, together with Commission to Take Testimony. Subscribed Oath of Master was filed December 23, 1986.

On December 31, 1986, notice of first meeting of parties was given, which was held January 9, 1987, and attended by Respondent Reza and by attorney for Informants, Hon. Tim Dollar.

Thereafter, on April 16, 1987, a hearing was held. Informants, Circuit Bar Committee for the 16th Judicial Circuit, appeared by their attorney, Hon. Tim Dollar. Respondent Reza appeared pro se. There being no preliminary motions, the cause proceeded to hearing, evidence was adduced, and both sides rested. The matter was thereupon submitted to the Master.

Count I of the Information Under Rule 5 charges Respondent with violation of Disciplinary Rule DR 6–101(A)(3), under Canon 6 of Supreme Court Rule 4, Code of Professional Responsibility, effective 1–1–71, and in effect at the time of the misconduct charges, which Disciplinary Rule charges that "A lawyer shall not ... [n]eglect a legal matter entrusted to him.". Count I particularly charges that in July, 1981, Respondent accepted employment as an attorney to file two mechanics' liens and thereafter, failed to timely file one of the liens and failed to file suit to perfect either.

The Master finds that complainant Willig was a general contractor, in the business of rehabilitating older buildings (Tr. 5), and that he approached Respondent for representation in connection with collection of debt arising from a contract for rehabilitation (Petitioners' Exhibit 6) and agreement between Willig and property owner Werner, referred to by Willig as an ancillary agreement (Petitioners' Exhibit 7). (Tr. 6, 7, 8) Both contracts dealt with rehabilitation construction of improvements at 4154 Harrison, Kansas City, Missouri, sometimes referred to as 4154–56 Harrison. The Master finds that these properties are the same property.

In the initial meeting between Respondent and Willig on the matter, Respondent suggested filing of mechanics' lien under Chapter 479 of the Revised Statutes of Missouri. (Tr. 9)

The Master finds that the initial agreement between Willig and the property owner, Werner, is dated April 3, 1981. The second agreement, which Willig refers to as an ancillary agreement, is undated, and was necessitated by the need for additional work not covered by the original contract. (Tr. 7)

The first contract refers to an Exhibit A, and the second and undated contract, whereby the owner agrees to pay for any additional work, refers to technical specifications, neither of which were made part of the record of the hearing. The Master concludes, however, that these two contracts, taken together, provided for rehabilitation work on one premise.

The debt which Willig sought the help of Respondent to collect was for $5,900 due and owing on the original contract, and $17,625 on the second contract. (Tr. 11)

The original meeting between Respondent and Willig took place in July or August of 1981, and a verbal understanding was reached that Respondent would receive a contingent fee of one-third to forty percent (Tr. 9), and Willig provided the Respondent with Petitioners' Exhibits 6 and 7 (Tr. 10) and paid Respondent the sum of $50.00 for "filing fee on lien". (Petitioners' Exhibit 3) (Tr. 10, 11)

The Master finds that while the dealings between Respondent and Willig contemplated the filing of two liens (Tr. 11), and in Count I of the Information Under Rule 5 it is charged that Respondent accepted employment to file two liens and filed only one, it is at least arguable that only one lien, properly drafted, would suffice to establish a lien on the property for amounts due under both contracts.

The Master finds that the employment of Respondent by Willig took place in July or August of 1981 (Tr. 9), and that the final work was done under both contracts in November, 1981 (Tr. 8); and further, that the mechanics' lien statement (Petitioners' Exhibit 8) was filed in the Office of the Circuit Clerk of Jackson County on January 6, 1982. The Master finds that this lien statement was timely filed.

The mechanics' lien statement recites that the work was finished 11–20–81. The mechanics' lien statement refers to a great number of attached exhibits, which exhibits were not made a part of the record. However, the Master concludes that the two contracts covered essentially the same job, and that the filing of the single mechanics' lien statement could have been sufficient to protect the client's rights up to that point. (A subsequently retained lawyer for Willig testified that two lien statements were filed (Tr. 30); however, Informants offered but one, and maintained throughout the hearing that only one was filed.)

The Master concludes that that portion of Count I of the Information Under Rule 5 alleging neglect of a client's interests by failing to file a second mechanics' lien statement is not made out by the evidence, and should not be sustained.

The Master finds that no suit to perfect lien was filed within the statutory period of six months following the filing of the lien statement on January 6, 1982. (Tr. 18)

The evidence shows that there were negotiations going on between Willig, with Respondent representing him, and Werner as late as March of 1982 (Petitioners' Exhibit 2), and that the parties met in March or May of 1982 with regard to resolving the matter (Tr. 14, 15), and that Willig was unaware at that time of the statutory deadline for filing a suit to perfect the lien. (Tr. 15) The Master finds that Respondent and Willig had no further contact, with the exception of the March 24, 1982, letter (Petitioners' Exhibit 2), referring to a meeting on March 22, and reciting a direction by Willig to Respondent that, should an offer be received from Werner, Respondent should discuss it with Willig. The evidence does not indicate any express authority from Willig to delay filing or not file suit to perfect the lien, nor does the evidence disclose that any settlement offer was made.

The whole record shows that prior to the expiration of the six-month period to file suit to perfect the lien, settlement negotiations were not going on between the parties and their attorneys to any extent that would justify Respondent in failing to file suit to perfect the lien, without express permission from Willig.

The Master further finds that Respondent and Willig had one prior attorney-client relationship, dealing with the collection of a debt evidenced by a dishonored check. There was nothing in their past dealings or in their then-current dealings

which would justify Respondent in not filing a suit to perfect the lien. Moreover, the evidence shows that not only did Respondent not have authority to not file the suit to perfect, but that he deliberately attempted to mislead Willig into thinking that the suit had already been filed. (Tr. 17, 18, 19)

Thereafter, the record shows that Respondent filed a suit for damages on behalf of Willig against Werner on February 2, 1983 (Petitioners' Exhibit 1) (Tr. 20).

The evidence shows that Willig contacted Respondent twice by letter in May of 1983 (Petitioners' Exhibit 5) (Tr. 16, 17), once in March, 1982 (Petitioners' Exhibit 2) (Tr. 12), and attempted to contact him by telephone on at least ten occasions (Tr. 19). The file does not show any evidence of communication by Respondent to Willig, nor is there evidence of any telephone call by Respondent to Willig, reporting on the status of the legal matter.

After termination of the lawyer-client relationship between Respondent and Willig, Willig eventually settled his $23,000 plus claim against Werner for $3,365 (Tr. 32), and recovered judgment against Respondent in the Circuit Court of Jackson County in the amount of $20,535.20 (Petitioners' Exhibit 4), which remains unpaid (Tr. 33, 34)

The Master concludes that Respondent was unresponsive and dilatory in handling his client's legal business, and this, taken together with his failure to file suit to perfect his client's mechanics' lien, constitutes neglect of a legal matter entrusted to him, in violation of Disciplinary Rule DR 6–101(A)(3).

Count II of the Information Under Rule 5 charges that Respondent, in violation of SCR 6.01, practiced law while under automatic suspension for failure to pay Missouri Bar enrollment fees for the years 1983, 1984, 1985 and 1986.

From the evidence adduced at hearing, the Master finds that Respondent did fail to pay his Missouri Bar enrollment fees for the years 1983, 1984, 1985 and 1986 (Tr. 49). The evidence further shows that Respondent admits that he has not paid his Missouri Bar enrollment fees for those years (Tr. 61, 62), and that Respondent further admits that he has continued to practice law during the period of automatic suspension provided by Rule 6.01 (Tr. 65, 66, 67).

The evidence further shows that Respondent practiced law on April 15, 1987, the day before the hearing in this cause, in Division 101 of the Circuit Court of Jackson County, Missouri, by having his name appear on the docket of the Judge thereof for that day (Petitioners' Exhibit 19) (Tr. 65, 66, 67), and by appearing on behalf of a client in the Judge's chambers, while being observed by an investigator of Petitioners' (Tr. 54, 56, 57).

The Master concludes that Respondent practiced law while under automatic suspension for failure to' pay Missouri Bar enrollment fees for the years 1983, 1984, 1985 and 1986, in violation of SCR 6.01.

Count III of the Information Under Rule 5 charges that Respondent has violated present Rule 8.4(d) of the Rules of Professional Conduct, by failing to cooperate in the investigation of Respondent's alleged misconduct contained in Counts I and II. Specifically, Count III alleges that the Respondent ignored the communications of the Missouri Bar Administration, the Circuit Bar Committee General Chairman, and the Chairman of Division Two of the Circuit Bar Committee, and failed, after notice, to appear at the informal hearing.

The Master finds that the Respondent was notified by letter dated April 10, 1986 (Petitioners' Exhibit 16), signed by Richard H. Heilbron, General Chairman of the Sixteenth Circuit Bar Committee, that Mr. Willig had filed a complaint against Respondent. A copy of Mr. Willig's complaint accompanied this letter. Mr. Heilbron advised Respondent that Respondent was expected to make a written reply to the complaint, to be directed to Mr. Heilbron as General Chairman of the Sixteenth Judicial Circuit Bar Committee within fifteen days. Attached to Mr. Heilbron's letter to Respondent was a second page which the Master understands is a blind postscript,

notifying Respondent of his delinquency in payment of bar enrollment fees, the amount owed, and advising Respondent further that even if he paid the fees and penalties, he was obligated to apply to the Supreme Court for reinstatement to the practice of law. The third paragraph of the blind postscript advised Respondent that if he was still practicing law, he was subject to disciplinary action, without regard to any complaint filed by Mr. Willig.

The Master finds that the Respondent made no written response to Mr. Heilbron's letter of April 10, 1986 (Tr. 40).

The Master further finds that on May 23, 1986, Mr. Charles E. Hoffhaus, Chairman of Division Two of the Sixteenth Circuit Bar Committee, by personal and confidential letter to Respondent (Petitioners' Exhibit 15), advised Respondent that an informal hearing on the Willig complaint had been scheduled for June 26, 1986, and further advising of the time and place (Tr. 40, 41). This letter requested Respondent's attendance at the informal hearing, and further advised him to be prepared to testify and to bring any witnesses and all documents and papers relating to the matter.

Petitioner's Exhibit 17 is a transcript of the informal hearing.

The Master finds that Respondent did not appear in person or by counsel at the informal hearing held June 26, 1986, and there is no evidence that he provided to the Committee any witnesses, documents or papers relating to the Willig complaint (Tr. 42). The Master heard no evidence of any communication to the Respondent by the Missouri Bar Administration other than by Mr. Heilbron and Mr. Hoffhaus on behalf of the Sixteenth Judicial Circuit Bar Committee. After the informal hearing, the Circuit Bar Committee voted to proceed to a formal hearing.

Formal hearing by the Circuit Bar Committee was held on September 25, 1986. Respondent appeared under subpoena at the formal hearing. The transcript of this hearing, Petitioners' Exhibit 18, does not proceed to the vote of the Committee, but terminates with an adjournment to provide Respondent with time to provide the Chair-

man and the Committee with some documentation. The record of the formal hearing and the record of the hearing conducted by the Master are silent as to whether Respondent availed himself of the opportunity to provide additional documentation. Also, there is no record that Division Two of the Sixteenth Judicial Circuit Bar Committee ever met again in connection with this case; however, the Information Under Rule 5 was signed by four members of the Circuit Bar Committee on October 23, 1986.

The entire record is silent as to when Willig made his complaint to the Bar Committee. However, it is noticed that Willig took his default judgment against Respondent on November 18, 1985, and that the Bar Committee's initial notice advising Respondent of the complaint filed by Willig is dated April 10, 1986.

The Master concludes that the allegations contained in Count III, charging violation of Rule 8.4(d) of the Rules of Professional Conduct, should be sustained, in that Respondent was at no time forthcoming with those charged with the responsibility of investigating the complaint against Respondent, and specifically, that he ignored both the notice of the complaint by the General Chairman of the Sixteenth Judicial Circuit Bar Committee, and the requests contained in the notice, and failed to appear at the investigatory (informal) hearing, and provided no information to the Committee, all of which conduct is prejudicial to the administration of justice.

The Master recommends that the allegations of all three Counts be sustained. Although each Count is disparate and unrelated, there is a kinship among all three, in that they all involve acts of omission: neglect of a legal matter entrusted to him, failure to pay bar enrollment fees, and failure to cooperate. Only Respondent's act of continuing to practice law while under automatic suspension constitutes an act of commission.

The Master recommends that Respondent be suspended from the practice of law for a significant period of time, sufficient to give Respondent an opportunity to re-examine the extent of his motivation and de-

sire to practice law diligently, competently, and within the minimal framework of the Rules of Professional Conduct.

<div style="text-align:center">

(s) Channing Blaeuer

Channing Blaeuer

Master