**In re Roger J. STAAB, Respondent.**

**No. 71729.**

Supreme Court of Missouri,
En Banc.

March 13, 1990.

Rehearing Denied April 17, 1990.

Charles Gotschall, Kansas City, for informant.

Hollis H. Hanover, Kansas City, for respondent.

## ORIGINAL DISCIPLINARY PROCEEDING

BILLINGS, Judge.

Disciplinary proceeding by the Sixteenth Judicial Circuit Bar Committee pursuant to Rule 5[1] against respondent, Roger J. Staab. A five count information filed May 31, 1989, in this Court, charged respondent with violation of the following Disciplinary Rules (DR) of Rule 4: *DR 1–102(A)(1), (5), and (6); DR 6–101(A)(3); DR 7–101(A)(3); DR 9–102(A), (B)(3) and (4)*.

The Court appointed the Honorable Donald Barnes, Circuit Judge of the 18th Judi-

---

1. All references are to the Supreme Court Rules. Disciplinary Rule (DR) references in the body of this opinion are to former Rule 4, the Code of Professional Responsibility. Former Rule 4, effective January 1, 1971, governed during the period which included the incidents which gave rise to this proceeding. The Code of Profession-al Responsibility has now been replaced by the Rules of Professional Conduct as adopted on August 7, 1985, and effective on January 1, 1986. The result here would not be altered, but in fact strengthened, by the application of the Rules of Professional Conduct.

cial Circuit, as Master to hear the proceeding. The Court agrees with the Master's findings and conclusions and orders disbarment.

■■■■ The Master's findings, conclusions and recommendation in a disciplinary proceeding are advisory in nature. *In re Adams,* 737 S.W.2d 714, 717 (Mo. banc 1987); *In re Hardge,* 713 S.W.2d 503, 504 (Mo. banc 1986). The Court must review the evidence *de novo,* determine for itself the credibility, weight and value of the witnesses, and make its own conclusions of law. *In re Murphy,* 732 S.W.2d 895, 902 (Mo. banc 1987); *Matter of Williams,* 711 S.W.2d 518, 519 (Mo. banc 1986).

This is respondent's second time before the Court on disciplinary matters occurring from 1979 to 1986. *See In re Staab,* 719 S.W.2d 780 (Mo. banc 1986). He does not deny the events and facts charged in the present information and admits his actions violated portions of the Code of Professional Responsibility. Respondent contends he is fully rehabilitated and has been since 1985 and his failure to cooperate with the Bar Committee was not intentional or willful.

Counts I, II, and III arise from his representation of Ricky Payne in a claim for workers' compensation. Payne's employer-insurer protested the claim and refused to cover any of Payne's medical expenses. As a result, Payne's personal health insurance company, United Food and Commercial Workers Union and Employers Midwest Health Benefits Fund ("Union"), paid the medical costs, which amounted to more than $6,000.00.

A compromise settlement was approved by the Division of Worker's Compensation in May, 1984, between Payne and employer-insurer. Payne's recovery amounted to slightly more than $6,000.00, with respondent being allowed an attorney's fee of one-fourth. The settlement also provided for payment to Payne the sum of $4,469.00 to be paid to the Union.

In May, 1984, respondent received the total settlement proceeds which he deposited into his trust account. On August 16, 1984, respondent issued a check from the trust account to Payne representing Payne's portion of the settlement and a check to himself for payment of his attorney's fees. Payne requested respondent to disburse the Union's proceeds, $4,469.00, out of that account.

Respondent notified the Union in November, 1984, that he had received the settlement payment and would be forwarding the Union's portion to them in the near future. Respondent did not send the payment even after numerous inquires from the Union and its attorneys. After almost two years without receiving payment, the Union initiated a lawsuit in Illinois. Respondent defaulted. During this time period, respondent was before this Court on another disciplinary matter.

Before respondent paid the Union the $4,469.00 from the settlement claim, Payne was again injured. He requested medical coverage under the Union's policy but was refused. The Union informed Payne they had not been reimbursed by respondent on the prior settlement which respondent had possession of for approximately two years, four months. After discovering from the Union respondent had not sent the prior settlement payment, Mrs. Payne immediately called respondent. Respondent apologized, took full responsibility, and promised to pay the Union. Finally, after Mrs. Payne's phone call, before judgment was entered on the Illinois suit and after this Court's public reprimand in *Staab I,* respondent paid the Union the full amount from his personal checking account. Respondent's explanation for his failure to pay the settlement amount was that he was doing his own bookkeeping and that he simply "didn't do it—kept putting it on the back burner" and forgot about it. He also said that at that time he was handling approximately 350 to 400 cases by himself. He also asserts he believed the debt was his own personal debt, not that of the Payne's.

These actions are charged to be in violation of *DR 6–101(A)(3), DR 7–101(A)(3),*

*and DR 9–102(A), (B)(3) and (4).*[2]

Count IV alleges violation of *DR 6–101(A)(3) and DR 7–101(A)(1–3)* in his representation of Edward Vodicka. Vodicka sought respondent's assistance in pursuing a workers' compensation claim pertaining to lung problems associated with exposure to certain chemicals while at work. Respondent negotiated a settlement totalling slightly more than $30,000.00 on this claim. In addition, respondent filed a civil action for Vodicka in 1984 because of the damages Vodicka allegedly suffered from the chemicals. This action remains pending in Greene County Circuit Court.

Along with the workers' compensation claim, Vodicka requested assistance with a social security claim Vodicka had filed *pro se*. Vodicka had been denied social security benefits at the earlier stages and enlisted respondent for the formal hearing. Social security benefits were denied at this stage also. Respondent appealed the decision to the highest administrative level in Baltimore, Maryland where benefits were also denied. Respondent then filed an appeal in the United States District Court that was dismissed 18 months later for lack of prosecution. Vodicka first learned of the dismissal approximately three and one-half years later through his own efforts. Respondent contends he believed that claim was without merit and that Vodicka would be able to receive benefits after filing a new claim because of newly discovered evidence. Respondent admits he did not inform Vodicka that the first claim had been dismissed for failure to prosecute and that he did not inform Vodicka of his right to refile a claim upon additional medical evidence that became available. Not until approximately two years later did Vodicka, with assistance from his congressman, refile for, and was awarded, social security benefits. However, the social security benefits were only retroactive to June, 1986. Because of respondent's failure to refile or inform Vodicka of his right to refile, Vodicka lost from one to three year's worth of an undetermined amount of social security benefits for which he otherwise would have been eligible.

Count V asserts that because of the actions resulting in the charging of the first four counts, respondent has violated *DR 1–102(A)(1), (5), and (6).*[3] The count alleg-

## 2. DR 6–101 Failing to Act Competently
(A) A lawyer shall not:

   \*    \*    \*    \*    \*    \*

(3) Neglect a legal matter entrusted to him. (Now Rule 1.3 of the Rules of Professional Conduct).

### DR 7–101 Representing a Client Zealously
(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by *DR 7–101(B)*. A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with curtesy and consideration all persons involved in the legal process.

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under *DR 2–110, DR 5–102,* and *DR 5–105*.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under *DR 7–102(B)*. (Now Rule 1.3 and 1.4 of the Rules of Professional Conduct).

### DR 9–102 Preserving Identity of Funds and Property of a Client
(A) For purposes of the Disciplinary Rule 9–102, "insured deposit accounts" shall mean government insured accounts at a regulated financial institution on which withdrawal or transfers can be made on demand, subject only to any notice period that the institution is required to observe by law or regulation.

(B) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable insured depository accounts maintained in the state in which the law office is situated, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

   \*    \*    \*    \*    \*    \*

(C) A lawyer shall:

   \*    \*    \*    \*    \*    \*

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer that the client is entitled to receive. (Now Rule 1.15 of the Rules of Professional Conduct)

## 3. DR 1–102 Misconduct
(A) A lawyer shall not:

es respondent's conduct has been prejudicial to the administration of justice to such an extent that it has adversely reflected upon respondent's fitness to practice law.

Respondent candidly admits in the Payne case that he agreed with his client and the Union to pay from the settlement proceeds the reimbursement due the Union. He admits he did not maintain sufficient funds in his trust account at all times to fully pay this obligation. He admits he used trust account funds to pay office rent and expenses. He admits he received repeated demands for payment, that he was sued and defaulted, and that the debt was repaid two years four months later, and then only after he learned Payne had been denied medical benefits for another work related injury. The payment also coincided with a public reprimand by this Court on another matter. Respondent offers no justification for his actions other than he was a poor bookkeeper and that his caseload was such that he could not keep up with everything. He also stated he did not realize his actions were causing his client any harm.

In addition, when contacted by the Bar Committee on this matter, respondent failed to respond to its correspondence, much less cooperate by producing the documents requested. The Bar Committee notified respondent of this complaint in January, 1987, and again in February, 1988, with no response from respondent. After February, 1988, respondent received numerous written and oral requests to produce his bank accounts records. Although respondent admits his records are in existence somewhere, he asserts he is unable to find them. Respondent made no attempt to get copies from the bank, which the Bar Committee ultimately did at some expense.

Respondent's explanation for his lack of cooperation is that he suffered severe panic attacks whenever he saw mail from the Bar Committee and this Court. He asserts the panic attacks are much like a claustropho-bic attack. Because of his panic, respondent did not open the mail, and therefore he was not aware of nature and extent of the Bar Committee's requests. He offers this explanation as evidence that his failure to comply was not willful. In his defense, he also argues he has fully cooperated with the Bar in the hearing stages and has done everything possible to expedite his case.

The Master found mitigating factors of respondent's long standing practice and a reputation of expertise in his field of practice, and his participation in the continuing legal education of the bar. Respondent has employed competent clerical help and has the assistance of three other attorneys for approximately the same caseload as he had handled by himself. These factors were taken into account by this Court in respondent's prior disciplinary matters resulting in public reprimand. *In re Staab*, 719 S.W.2d at 785–85. These factors do not overcome the manifest showing in the evidence nor do they mitigate the seriousness of the offense, but demonstrate the extent of the tragedy involved. *Matter of Mendell*, 693 S.W.2d 76, 78 (Mo. banc 1985).

The purpose of attorney discipline is to protect the public and maintain the integrity of the legal profession. *In re Littleton*, 719 S.W.2d 772, 777 (Mo. banc 1986). The discipline must be designed to correct any antisocial tendency on the part of the attorney as well as to deter others who might tend to engage in similar violations. *In re Montrey*, 511 S.W.2d 805, 806 (Mo. banc 1974) quoting *In re Sullivan*, 494 S.W.2d 329, 334 (Mo. banc 1973). As lawyers are frequently called upon to care for or hold in trust clients' monies and property, misappropriation of those funds are grounds for disbarment. *In re Robison*, 519 S.W.2d 1, 4 ((Mo. banc 1975); *In re Murphy*, 732 S.W.2d 895, 903 (Mo. banc 1987). Restitution of the converted funds is no defense to the charges. *In re Mentr-*

---

(1) Violate a Disciplinary Rule.

\* \* \* \* \* \*

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

(Now Rule 8.4 of the Rules of Professional Conduct).

*up,* 665 S.W.2d 324, 325 (Mo. banc 1984); *In re Kohlmeyer,* 327 S.W.2d 249, 252 (Mo. banc 1959).

■ The Payne incident is much like the facts of *In re Lechner,* 715 S.W.2d 257 (Mo. banc 1986). Lechner received a settlement amount of $8,000.00 in a client matter, a portion of which was to go to the United States Army. The Army's portion was for reimbursement of medical expenses advanced to Lechner's client. After numerous attempts by the Army to obtain payment, suit was filed and a default judgment was entered against Lechner. Lechner admitted committing the acts but denied the acts were intentional or dishonest. The *Lechner* court found that "the paramount objective of the Court in cases such as this is to protect society and maintain the integrity of the legal profession" and that that objective was best served in that case by disbarment. *In re Lechner,* 715 S.W.2d at 259, quoting *In re Mentrup,* 665 S.W.2d at 325.

Another case resulting in disbarment for the attorney who failed to timely account to a client for funds in the attorney's possession is *Matter of Williams,* 711 S.W.2d 518 (Mo. banc 1986). Williams deposited a settlement award into his trust account which was overdrawn at that time. For a period of several months, Williams' client requested payment and although Williams sent a check, there were insufficient funds to cover it. Williams did not defend his actions but presented mitigating evidence that his wife-bookkeeper did not keep adequate bookkeeping records and he had no knowledge of the balance in the trust fund account. He therefore plead that his actions were not willful. However, the evidence showed Williams knew the trust account had long been in serious disarray and took no corrective action. The Court in response said: "We cannot allow an attorney to escape ultimate responsibility for mishandling of a client's funds where he knowingly and intentionally ignores trust account problems and demonstrates an almost total disregard for the protections of those funds." *Matter of Williams,* 711 S.W.2d at 522. This holding is even more appropriate in the instant case where respondent himself is in charge of the bookkeeping. The Court went on to say: "Given the nature of the violation, and respondent's long disregard for the protection of his clients' funds, respondent's testimony regarding recent improvements upon his accounting system does not offer sufficient safeguard to the public interest and therefore cannot alter the result here." *Matter of Williams,* 711 S.W.2d at 522.

As to the Vodicka charges, the Court has said that a delay of almost one year in filing a petition amounts to neglect of a matter entrusted to an attorney. *In re Hardge,* 713 S.W.2d 503, 505 (Mo. banc 1986). The failure to pursue the social security claim resulted in a financial loss to a physically impaired client. This neglect is of sufficient caliber to warrant disbarment.

The Court has also found that the neglect of an attorney's own interests by failing to respond to the correspondence from the Bar Committee casts doubt on the attorney's ability to represent others. *In re Reza,* 743 S.W.2d 411 (Mo. banc 1988). Respondent's actions were done during a period in which he was under investigation by this Court for other disciplinary violations. The Court based its earlier decision to publicly reprimand respondent on the fact that those instances of neglect inflicted no irreparable harm to respondent's clients and that respondent did not seek personal gain from his actions. *In re Staab,* 719 S.W.2d at 784. Respondent's actions and their repercussions in the present charges resulted in loss of social security benefits to one client and loss of immediate medical coverage to another, as well as using the monies owing to the Union for two years and four months. Given the totality of the circumstances, respondent's actions warrant disbarment.

Respondent is ordered disbarred.

ROBERTSON, RENDLEN, HIGGINS, COVINGTON, and HOLSTEIN, JJ., concur.

BLACKMAR, C.J., concurs in separate opinion filed.

BLACKMAR, Chief Justice, concurring.

I agree that the respondent should be disbarred. The evidence shows that he commingled monies belonging to others with his own funds, and did not make prompt remittance. He used his trust account for his own purposes, and the balance was not always adequate to cover outstanding obligations. The case therefore comes within the holdings of *In re Mendell*, 693 S.W.2d 76 (Mo. banc 1985) and *In re Lechner*, 715 S.W.2d 257 (Mo. banc 1986). I suppose that it is possible that a trust account could become impaired by reason of carelessness, as in drawing a check for a larger amount than was due, or having a check deposited in the account returned by the drawee bank after the proceeds had been checked out of the trust account, but it is incumbent on the lawyer who is faced by problems of this kind to provide justification.

This case is unfortunate, because of the evidence that the respondent is a capable advocate in the workers compensation area, and has shared his knowledge with others. It is also unfortunate that all of the charges involve conduct occurring before our earlier opinion was handed down. But I am persuaded that, had the present charges been known to us at the time of the first proceeding, disbarment would have been necessary.

This proceeding shows the need for a counseling procedure, such as I recommended to The Missouri Bar in September of 1989. *See* C.B. Blackmar, *In Pursuit of Excellence*, 45 J.Mo.Bar 395, 396 (1989). Had counseling on office management and docket control been available to this respondent at the time of the initial complaints against him, perhaps correction could have been made before multiple serious charges accumulated.

I concur in the principal opinion.