In the Matter of Marvin L. MALONEY, Respondent.

No. 62004.

Supreme Court of Missouri, En Banc.

Sept. 8, 1981.

Charles B. Fitzgerald, C. Michael Fitzgerald, Warrensburg, for informant.

Robert G. Oberlander, Clem W. Fairchild, Kansas City, for respondent.

SEILER, Judge.

This is an original disciplinary proceeding instituted by the Advisory Committee of the Missouri Bar against respondent. The special master recommended that the information be dismissed and all issues found in favor of respondent.

Although the special master's findings of fact and conclusions of law are helpful in disciplinary proceedings, they are merely advisory, and not binding. "[T]he ultimate responsibility for finding the facts is ours. It is our duty to make our own decision." *In re Weiner*, 547 S.W.2d 459, 460 (Mo. banc 1977). We, in fact, find that certain of the actions of respondent warrant discipline.

Of the five counts before us, we agree with the special master that the evidence does not call for discipline in three of them. In one count the evidence was insufficient to conclude otherwise and, in the other two, the violations were merely technical, having excusable motives and resulting in no harm. If the purpose of these proceedings is to protect the public and the profession, rather than punish the attorney, *see Matter of Bear*, 578 S.W.2d 928 (Mo. banc 1979), we see no need in lengthening this opinion with the recitation of facts that do not bear on this purpose.

As for the remaining two counts, however, we find the evidence shows a continuing pattern of neglect that cannot be excused. "Neglect of duty to clients is sufficient for disciplinary action." *Matter of Alpers*, 574 S.W.2d 427, 428 (Mo. banc 1978).

*The Schwaberow Matter*

In this count, respondent permitted what should have been a routine settlement of an automobile accident with an insurance company to drag on from November 1976 to July 1978. Respondent's client, Jane Schwaberow, a resident of Akron, Ohio, was involved in an automobile accident in Missouri while visiting her son and daughter-in-law in Kansas City. In negotiations conducted in November 1976, the evidence tends to show that respondent made an initial settlement of $1,750 with the insurance company without his client's authorization. Whether or not this was the case, the settlement draft and releases lay in respondent's file for months without Mrs. Schwaberow's knowledge that any settle-

ment had been made and without respondent's taking any further action to wind up the matter. This was so despite his partner's and his associate's repeated reminders about the matter.

Mrs. Schwaberow was apparently unaware that respondent had settled with the insurance company until sometime in, or after, January 1977. Before then, however, she had indicated to respondent's associate her unwillingness to settle for the $1,750 initially proposed to her by respondent after his negotiations with the insurance company. When informed of the existence of the draft by respondent's partner, Mrs. Schwaberow told her that the amount was inadequate.

Respondent's partner wrote a memo to respondent on March 14, 1977 informing him that Mrs. Schwaberow would not accept the $1,750 settlement offer and that he should contact her immediately, which he apparently did, although the record is not clear as to what was said between them.

In May 1977, while in Kansas City on a visit, Mrs. Schwaberow called respondent's wife and found that he was no longer in his old office. She obtained his new number and apparently called and left a message. Respondent returned the call and then called a second time. Respondent said that he had contacted the insurance company claims representative, that he would get in touch with him again that weekend, and that he would contact her in Ohio by June 1.

By July 7, 1977, however, Mrs. Schwaberow had not yet heard from respondent. She sent a letter to the Missouri Bar complaining that she did not know how to get in contact with respondent "who is mostly too busy." She enclosed a letter for respondent which the Missouri Bar forwarded to him. In the letter she recounted their recent contacts and wrote,

> "I have not heard a word from you—What are your excuses now? You seem too busy to even contact me—so that I might know what is happening—"

She received no response to her letter.

Respondent admits that between August 1977 and May 1978, although he knew that the $1,750 settlement figure was unacceptable to his client, he did not contact the insurance company. He explains this by saying he was shocked by Mrs. Schwaberow's complaint to the Missouri Bar and that he really did not know what to do to handle it. He "backed off of that particular case." He "didn't want to touch it with a ten-foot pole."

Respondent gives the above excuses despite his own testimony that Mrs. Schwaberow subsequently called him in January 1978 and made it clear that she wanted him to go ahead and represent her in the settlement. Even so, it was not until May or June 1978 that he recontacted the insurance company and in July 1978 the settlement was finally made.

*The Matters Matter*

On or about March 29, 1975, respondent filed a lawsuit for a client, Jeanette Matters. Mrs. Matters requested that respondent file applications for a change of judge and a change of venue because both the prosecuting attorney of the county and the judge were friends of the defendants. Although the change of venue was applied for and granted, the application for the change of judge was withdrawn. This was done without Mrs. Matters' knowledge or permission. After the change of venue, the court file indicated that respondent did nothing further to prosecute the case.

On February 20, 1978, the action was placed on the inactive trial docket. Respondent was notified of this but failed to notify Mrs. Matters.

On February 13, 1979, the action was dismissed without prejudice. Mrs. Matters had dismissed respondent as her attorney on July 17, 1978, but was financially unable to hire another lawyer to replace respondent or later to reinstitute the suit. She claims to have invested $30,000 in the purchase of a resort which was part of the subject matter of the suit. Respondent testified that it was $18,000. In any case, she has yet to recover any money.

We do not suggest any opinion as to the merits of the case or Mrs. Matters' chances of success. We note, however, that substantial sums were involved. Respondent was to be paid on a contingent fee basis. He admitted that there was merit, even at the time of the disciplinary hearing, to at least one count in her case and yet he failed to prosecute the matter. After the filing of the suit, one potential witness died and another was declared incompetent. Of the several witnesses suggested by Mrs. Matters, only one was contacted, and he by letter.

A summary of the correspondence from Mrs. Matters to respondent will further detail respondent's neglect.

In a letter dated April 21, 1975, Mrs. Matters inquired as to the outcome of the applications. She received no response to the letter.

In a letter dated April 25, 1975, Mrs. Matters informed respondent that she had gone to the court house and found out that they had received a change of judge and venue. She also mentioned other legal matters that she wanted to discuss with him. She received no response to that letter.

In a letter dated May 28, 1975, Mrs. Matters wrote respondent and informed him of the worsening situation in which she found herself. She was quite upset both by the situation and by respondent's lack of response to her letters. In the letter she wrote,

"My head spins just trying to figure all this out and when I get no answer from you [it] just makes the things seem worse.

I do appreciate your personal situation Marvin as you know I do but please understand my apprehension when I do not get an answer from you.... Please don't wait until it is to [sic] Late [sic] for us to win. People forget and it has been over a year now."

In a letter dated July 11, 1977, Mrs. Matters wrote respondent again complaining of his lack of communication with her. Towards the end of her letter, Mrs. Matters wrote the following:

"If you feel that you can no longer represent me in this suit will you please write and tell me? I cannot aford [sic] to let this run out of time. I would rather that you kept your word to me when you told me that you would stick with this and see it through. I have understood the personal problems that you have had and have understood that delay but please Marvin do something positive for me and lets [sic] get this thing into court.

I want to get all of these things settled so that I can start to live a normal Life [sic] also without having all of these things on my back."

She received no response.

In her last letter before dismissing respondent as her lawyer, dated June 13, 1978, Mrs. Matters was aware that her suit had been placed on the inactive docket. She demanded that respondent contact her or send her her file within the month or she would contact the Missouri Bar. Again there was no response.

As said, on July 17, 1978, Mrs. Matters dismissed respondent as her attorney.

Respondent's excuses for his lack of diligence in these matters center around his duties as a state representative from 1975–1979. In June 1975, respondent also went through a divorce and was out of his office for about three months in early 1976 because of heart problems.

Rule 4, DR 6–101(A)(3) prohibits a lawyer from neglecting a legal matter entrusted to him. DR 7–101(A) prohibits a lawyer from 1) failing to seek the lawful objectives of his client, 2) failing to carry out a contract of employment, and 3) prejudicing or damaging his client. We think that the above evidence demonstrates that respondent violated these rules as charged. Respondent stated that he found serving in the legislature "very definitely incompatible" with conducting a law practice and that his legislative duties took precedence over his services as a lawyer. With respect to Jeanette Matters he testified that by reason of his legislative involvement he lacked the time to handle her case. While we applaud re-

spondent's dedication to public service, we cannot condone his neglect of his clients. If he found that he was too busy to handle the legal needs of his client, he should not have chosen to continue in their employment. DR 6–101(A)(3) and DR 7–101(A) obliged him to handle his clients' affairs properly or not to handle them at all.

We cannot but remark on respondent's failure to answer the pleading letters of Jeanette Matters. Although we are not suggesting that failure to respond to a letter is, in itself, grounds for discipline, repeated failure to answer letters concerning important legal matters which were, in this case, worsening for the client can amount to neglect. The result of respondent's neglect was not only the distress and frustration of his client, but a potentially weakened legal position. Such conduct is inexcusable and does discredit to the profession.[1] Prompt responsive letters to clients show concern and, at the same time, avoid the type of misunderstandings that cropped up between respondent and his clients.

As earlier said, neglect and procrastination on the part of a lawyer in the handling of a client's business is inconsistent with approved professional standards, *In re Alpers, supra.* The misconduct in the case at bar is not as extensive as it was in *Alpers,* where the discipline administered was suspension for ninety days with leave thereafter to apply for reinstatement. In this case public censure will no doubt serve the ends of justice. Lawyers should realize from this case the importance of handling their clients' business promptly and that persistent procrastination may very well result in suspension or worse. Our action here is meant to protect the public and the profession by making it clear to both that the court expects lawyers to be diligent in all aspects of the proper handling of their clients' matters.

Respondent is publicly censured for his misconduct as set forth above.

DONNELLY, C. J., and RENDLEN, MORGAN, HIGGINS and BARDGETT, JJ., concur.

WELLIVER, J., dissents in separate dissenting opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent. I believe that the public has a right to expect a higher standard of proficiency and competency than that exhibited by the respondent attorney. I do not believe that "public reprimand" is the appropriate judgment for us to enter if our goal is to assure the public of a higher standard of professional competency than that of respondent.

1. Surveys published by the Missouri Bar—Prentice Hall in 1963 and by the Special Committee to Survey Legal Needs of the American Bar Association in 1977 both showed that lack of promptness and failure of the attorney to keep the client informed were two of the main causes of dissatisfaction among clients with the profession.