In re Forriss D. ELLIOTT, Respondent.

No. 65640.

Supreme Court of Missouri,
En Banc.

June 25, 1985.

Charles A. Newman, Mary Ann L. Medler, St. Louis, for Bar Committee.

Carroll J. Donohue, Dorothy White-Coleman, St. Louis, for respondent.

PER CURIAM.

■ This case involves a disciplinary proceeding instituted by the Bar Committee of the Twenty-Second Judicial Circuit of the Missouri Bar against respondent, Forriss D. Elliott. The Committee found probable cause that respondent was guilty of professional misconduct and filed an information in this Court. We appointed Hon. Michael F. Godfrey, Circuit Judge, Twenty-Second Judicial Circuit, as special master. After hearing, the special master made findings of fact and conclusions of law in which he found respondent guilty of having violated certain rules of professional conduct and recommended that respondent be reprimanded. In a disciplinary proceeding, however, we must review for ourselves the evidence, the credibility, weight and value of the witnesses, and determine all fact issues necessary to a decision. *In re Pine,* 576 S.W.2d 538, 539 (Mo. banc 1979). Accordingly, we have conducted our own independent review of the evidence presented to the special master.

The information is in four counts. Count I charges respondent with failing to carry

out a contract of employment and misappropriating $200 of his clients funds, in violation of Missouri Supreme Court Disciplinary Rules, DR 1–102(A)(1) and (5), DR 7–101(A)(2), and DR 9–102(A)(2) and (B)(3) and (B)(4). Count II alleges that respondent failed to carry out a contract of employment in that he failed to prosecute the case adequately and he neglected to advise the client of his inaction, in violation of Missouri Supreme Court Disciplinary Rules, DR 1–102(A)(1) and (5), DR 6–101(A)(3) and DR 7–101(A)(2). The third count charges respondent with failing to preserve properly the identity of a client's funds and with failing to pay promptly the funds to which the client was entitled, in violation of the Missouri Supreme Court Disciplinary Rules, DR 9–102(A) and DR 9–102(B)(4). Count IV avers that respondent accepted a direct conflict of interest in violation of Missouri Supreme Court Disciplinary Rules, DR 5–105(A) and (B).

█ In disciplinary proceedings, it is required that guilt be established by a preponderance of the evidence. *In re Lowther*, 611 S.W.2d 1, 2 (Mo. banc 1981); *In re Weiner*, 547 S.W.2d 459, 561 (Mo. banc 1977).

### COUNT I

█ On December 10, 1980, respondent agreed to represent Mr. and Mrs. Richard Kardell in a collection matter. The employment contract provided that respondent would receive one-third of the recovery. Respondent obtained a consent judgment and also had a mechanic's lien placed on the debtor's property. Pursuant to the judgment, the debtor paid off most of the debt up front and agreed to pay the balance of approximately $600 over a six month period beginning in May, 1981. The payments were due on the 21st of the month, with the debtor enjoying the normal ten day grace period. All the checks were made payable to Kardell and either respondent or someone in his employ. The debtor's May check for $100 was dated May 28, 1981, and was delivered to respondent, who in turn mailed the check to the Kardells.

Some evidence suggests that the letter accompanying this first check requested that the Kardells endorse the check and send it back to respondent in order that respondent's fee could be apportioned. The Kardells contest the existence of such a letter and merely deposited the check into their account. The debtor's June check, dated June 21, 1981, was endorsed by one of respondent's associates and deposited into respondent's general account. The July check, dated July 25, 1981, was similarly endorsed and deposited into respondent's general account. The Kardells never received the June or July checks, but they were reimbursed for the June check by a check for $100 drawn on respondent's account. A letter, dated July 21, 1981, accompanied respondent's check, and the letter explained that the June check was inadvertently deposited into his account and he apologized for the error. The Kardells later received the debtor's August and September checks for $100 each. Apparently, these checks were mailed to the Kardells in October along with a letter and a copy of a memo sent to the debtor. The memo said that only three payments had been received. The debtor's October check for $119.81 was marked "paid in full" and apparently was mailed to the Kardells on November 19, 1981, along with a letter indicating that this was the final check and suggesting that respondent's involvement in this matter was concluded. The Kardells did not cash this check because it was marked "paid in full" and they had not received all of the money due them—the $100 for the July payment. They repeatedly tried to contact respondent in order to determine what should be done, but their efforts were to no avail. When the Kardells finally attempted to cash the October check, payment had been stopped by the debtor due to respondent's failure to remove the mechanic's lien on the debtor's property. The debtor threatened the Kardells with suit, and a satisfaction of judgment was eventually filed. The Kardells have never received the October payment.

While these facts may suggest the presence of poor communication with the client, especially in how the contingency fee would operate, they are insufficient to establish a violation of DR 1–102(A)(5) and DR 7–101(A)(2). Nor do we believe that respondent has violated DR 9–102(A)(2), which provides that money belonging in part to a client and in part presently or potentially to the lawyer shall be deposited in one or more identifiable bank accounts. The record does not support by a preponderance of the evidence that respondent violated this rule. The inadvertent deposit of the June check in respondent's account does not establish a violation. The deposit of the July check into respondent's account reflected one-third of the then received recovery. While customary practice may have been to either take one-third out of each check or bill for the fee at the end of the recovery, respondent apparently opted for a different means after the Kardells deposited the first check into their own account. Unless the client is aware of this form of payment, such practice is neither encouraged nor condoned, but under the sparse facts of this case does not rise to the level of violating DR 9–102(A)(2).

We do, however, believe that respondent has violated DR 9–102(B)(3) and (B)(4). After reviewing the evidence, it is clear that inadequate record keeping has caused much of the confusion surrounding what should have been a simple payment on a consent judgment. It is equally clear that the Kardells were not promptly paid their money due to the inadequate record keeping of respondent.

## COUNT II

We accept the special master's following findings of fact and conclusions of law as they relate to Count II. In February 1981, respondent was retained by the Kardells to represent them in collection of a $13,000.00 debt owed to them or their company, D & M Plumbing, by Tanglewood Country Club. On April 3, 1981, respondent's associate filed a mechanic's lien on the Tanglewood Country Club's property. On October 1, 1981, respondent filed a petition to enforce the mechanic's lien. However, service was never obtained on any of the defendants and respondent took no further action on this case. Mrs. Kardell attempted to reach respondent on several occasions to inquire as to the status of the case. Her calls were not returned or a secretary in respondent's office handled the call. Respondent did not communicate with the Kardells regarding the status of this case. On February 4, 1982, respondent's telephone log indicates that his office became or was aware of the lack of service upon the defendants, received information as to where the defendants could be served and noted that the Kardells were angry that the defendants had not been served and therefore had obtained the services of another attorney. On October 15, 1982, Mrs. Kardell mailed a letter to respondent requesting that respondent return her files in the Tanglewood case and the case discussed under Count I. Respondent has not returned these files, and he has not at any time withdrawn from the case and instead has remained as counsel of record until dismissal of the case.

The special master properly concluded that these facts establish that respondent neglected his clients and neglected a legal matter entrusted to him in contravention of DR 6–101(A)(3) and failed to carry out a contract of employment with his clients in contravention of DR 7–101(A)(2). The special master also found that respondent did not withdraw from the case which is mandatory if an attorney is discharged by his client in contravention of DR 2–111(B)(4). This violation was not charged in the information and we decline to rule on it. *See* In re Alpers, 574 S.W.2d 427, 429 (Mo. banc 1978).

## COUNT III

We also accept the special master's following findings of fact and conclusions of law as they relate to Count III. Respondent was retained to represent the plaintiff in a personal injury suit. The employment contract provided that respondent would be

paid on a one-third contingency fee basis. The parties agreed to settle the case for $1,500. Respondent received a check from the defendant dated June 19, 1981, for the amount of $1,500.00. The check was made payable to respondent and the plaintiff. The plaintiff testified that she was called into respondent's office to endorse the check and sign a release. She does not remember the date when she signed the check, only that it was sometime during the summer months. At that time, the plaintiff was told that she would not receive her share of the settlement for thirty (30) days, the time it would take for the check to clear. Thereafter, on July 23, 1981 and August 6, 1981, respondent drafted two checks from his Trust Account made payable to the plaintiff, each check for $499.50. It is unclear why respondent used this method of payment. On July 23, 1981, the plaintiff took the first check to the bank to have it cashed. Initially, she was told that there were insufficient funds in the account and the check could not be cashed. After talking to the Vice-President of the Bank, she had her check cashed in spite of the insufficiency. When the plaintiff went to respondent's office to receive the second check for $499.50, she had to demand the return of certain costs which she had advanced to respondent.

Although we do not believe that enough evidence has been presented to establish a violation of DR 9–102(A), we agree with the special master that the withholding of final payment by dividing the settlement into two payments, without an adequate explanation, is improper and that respondent failed to pay promptly or deliver to his client the funds in his possession which she was entitled to receive all in contravention of DR 9–102(B)(4).

## COUNT IV

■ Under the final count in the information, respondent is charged with having accepted the representation of a client when such representation presented a direct conflict of interest. Respondent was employed by a criminal defendant charged with child abuse. The wife of the defendant was subpoenaed to testify on behalf of the state. On the morning of the trial, she indicated that she did not want to testify. It would appear as if the state sought a guilty plea from the defendant and hoped that by subpoenaing the wife she would persuade the defendant to plead guilty. Once the trial began, the wife was called as a witness for the state and she refused to testify. The court advised her that should she fail to testify he might hold her in contempt. Late in the afternoon, before the case was continued to the following morning, the judge told the wife that she should consult an attorney. The courtroom clerk thereupon took the wife to the Lawyers Reference Service, but because of the lateness of the day no one was there. Sometime thereafter respondent consulted with the wife regarding the possibility of the right of a spouse to refuse to testify against the other spouse. The following morning, she told the judge that respondent was her attorney and that based upon the advice of her attorney she was not going to testify. Respondent then sought to have her invoke the attorney-client privilege during additional questioning. The court subsequently held her in contempt and had respondent take her to the County Jail. At this point, respondent contacted another attorney who agreed to represent defendant's wife. Later in the same day the defendant pleaded guilty.

We are not prepared to say that under the unique circumstances that lead to respondent's brief representation of both the defendant and the defendant's wife that respondent violated DR 5–105(A) and (B). The only evidence that we have before us is a copy of the transcript from that case and the forty pages of testimony from the prosecutor in that case which was taken in the proceeding before the special master. When weighed against what was apparently an exigent circumstance, this evidence is wholly insufficient to establish a violation. It might also be noted that the complaint in this count was filed by the prosecutor's office and not by either the defendant in

the child abuse case or the defendant's wife.

## DISCIPLINE

We would caution respondent that he has traveled perilously close to the edge of unacceptable conduct. His has not been conduct most becoming to the legal profession. We have concluded that the recommendation of the master that respondent be publicly reprimanded may in this instance be the appropriate discipline because thus far the conduct has resulted in neither financial benefit to the respondent nor financial loss to the clients. We caution respondent that the appearance of mishandling of causes and funds can destroy the professional image of the lawyer almost as effectively as misdeeds themselves. The Court expects and intends that there be no recurrence of such practices.

Respondent is ordered reprimanded.

HIGGINS, BILLINGS, BLACKMAR, DONNELLY, WELLIVER, JJ., and PREWITT, Special Judge, concur.

RENDLEN, C.J., concurs in result.

GUNN, J., not sitting.