**In re Robert I. ADELMAN,
Respondent.**

**No. 68116.**

Supreme Court of Missouri,
En Banc.

July 14, 1987.

Rehearing Denied Sept. 14, 1987.

John Kurtz, Kansas City, for the Bar Committee.

James S. Formby, Kansas City, for respondent.

HIGGINS, Judge.

The Bar Committee of the Sixteenth Judicial Circuit charged respondent with two counts of professional misconduct. The Master found that respondent was guilty of violation of Disciplinary Rule 6–101(A)(3) and 9–102(C)(3) and (4). The Master recommended that respondent be suspended and prohibited from practicing law until he can show himself medically fit and emotionally equipped to resume the practice of law.

The Master's findings were supported by the evidence. Respondent admitted his negligence on Count 1. In 1978, respondent's client, Virginia Marth, requested that respondent transfer her father's stock into her name. Respondent took four years to accomplish the transfer. During the interim some of the stock had split and further steps were necessary to effect the transfer of the split stock. Accordingly, in 1983, respondent requested that Mrs. Marth endorse the stock certificates and send them to him and advised her that he required one-half of his fee. On April 5, 1983, Mrs. Marth sent the stock by reg- istered mail with a check for $350.00 to the respondent. On June 12, 1985, Mrs. Marth wrote a letter to the Bar Committee to complain that respondent had not transfer- red the stock and had contacted her only once since he received the stock certifi- cates. She had made numerous attempts to communicate with respondent by writing letters and calling his office, but her calls and letters were not answered. The Bar Committee wrote to respondent recom- mending that he settle the matter with the client. Mr. Adelman in a letter of reply to the Bar acknowledged that Mrs. Marth's claim was "well-founded," admitted that he had lost the client's stock certificates and offered to make restitution to Mrs. Marth. When the hearing was held before the Mas- ter on November 7, 1986, respondent had not returned the fee to the client.

Respondent has since refunded the fee to Mrs. Marth, the lost certificates have been reissued and respondent has offered to pay an attorney to transfer the stocks to Mrs. Marth. He claims that because of his ef- forts to correct the negligence, Mrs. Marth has lost nothing; however, it was not until the hearing before the Master on Novem- ber 7, 1986, that respondent finally ten- dered a check to the client for the fee that she had paid him on April 5, 1983.

Count II stems from respondent's repre- sentation of Larry Scholz on a personal injury case. The case was settled on March 1, 1978, for $6,000. Respondent is- sued two checks to the client, Check Num- ber 413 to Larry Scholz and Shawnee Mis- sion Hospital in the amount of $1,000, and Check Number 414 to Larry Scholz in the amount of $2,432.65. The client testified that he attempted to negotiate the checks shortly after they were received but was told that there were not sufficient funds in the account to pay the checks; however, the checks had not been marked or stamped insufficient. The representative from Centerre Bank, the drawee bank, tes- tified that it was the normal course of business for people to call and verify funds on a check before depositing it into their bank. Shortly after this, Scholz was preoc- cupied with serious physical and mental

problems because of a stroke and a protracted divorce action and did not attempt to renegotiate the checks until the summer of 1984.

In 1984 when the client contacted respondent about the checks, the respondent failed to investigate the matter and placed the burden on the client to prove that the checks had not been paid. He testified before the Master that he had issued duplicate checks to Mr. Scholz, that they were negotiated, and that the duplicated checks were numbered 506 and 507 on respondent's special bank account. The Master subpoenaed the relevant bank records which revealed that check number 506 was written for $25 and check number 507 was written for $85.16. The Master further checked whether any checks were issued for the amounts in question for a twelve-month period surrounding the date respondent testified that he had reissued the checks. No checks were written for those amounts during the twelve-month period. On September 3, 1986, the client finally received from the respondent a check in the amount of $3,981.87 to replace the two earlier checks. The difference in the amount of $549.22 represents Mr. Adelman's computation of interest at the rate of nine percent per annum from the date the checks were originally issued.

Respondent testified that various personal and medical problems affected his conduct during the period of time in which these incidents occurred. In July 1978, Mr. Adelman underwent quadruple bypass surgery and was under medication. Respondent claimed this medication caused temporary lapses in memory. The Master noted, however, that Mrs. Marth requested the transfer of the split stock years later in 1983, and that the transfer was never accomplished. Also, in 1986, respondent made false statements before the Bar Committee concerning Mr. Scholz's checks. The Master concluded that the medication did not affect these acts. The Master was appalled by respondent's "cavalier attitude" towards the complaints made against him by former clients. He did not make legitimate attempts to resolve the clients' problems until forced by the committee's actions.

In disciplinary proceedings the Court's objective is to protect society and maintain the integrity of the legal profession. *In re Mentrup*, 665 S.W.2d 324 (Mo. banc 1984). In the *Mentrup* case, this Court disbarred an attorney for the misappropriation of a client's funds. The attorney had intentionally filed numerous false and fraudulent settlements in connection with a client's estate permitting a judgment to be entered against the client which nearly resulted in the sale of the client's home. This Court held that the attorney's structural brain defect did not justify a lesser sanction than disbarment.

The failure to pay over money collected for a client is a serious offense. In addition, in his negligent handling of his client's stock transfers, Mr. Adelman fell short of his duty and responsibility as an attorney to provide competent, prompt resolution of matters entrusted to him by his clients. Disbarment is an extreme measure and unless it is clear that the attorney should never practice law, a less extreme means of discipline is preferred. *In re Sullivan*, 494 S.W.2d 329, 334 (Mo. banc 1973). The Master noted that respondent is 68 years old and has served as a member of the Bar and a practicing attorney for 45 years. The record does not reveal any history of professional misconduct. Under these circumstances, suspension from the practice of the law is an appropriate disposition.

The respondent is suspended indefinitely from the practice of law with consideration of any application for reinstatement conditioned upon proof that he is medically fit and emotionally equipped to resume the practice of law.

BILLINGS, C.J., and BLACKMAR, DONNELLY, ROBERTSON and RENDLEN, JJ., concur.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent.

The principal opinion acknowledges that "the failure to pay over money collected for a client is a serious offense," but then only suspends respondent lawyer with "application for reinstatement conditioned upon proof that he is medically fit and emotionally equipped to resume the practice of law."

To my knowledge, there is neither a prescribed medication nor medical counseling which offers a cure for stealing. I perceive no great talent on this Court for determining "medical fitness" to practice law nor am I acquainted with any medical practitioners who are qualified to decide for this Court how to protect the public from unqualified and unscrupulous lawyers.

"[I]t is always a ground for disbarment of an attorney that he has misappropriated the funds of his client, either, by failing to pay over money collected by him for his client or by appropriating to his own use funds entrusted to his care." *State Bar Comm. v. Stumbaugh*, 123 S.W.2d 51, 53 (Mo.1938). *See also, In re Matter of Williams*, 711 S.W.2d 518 (Mo. banc 1986); *In re Mendel*, 693 S.W.2d 76 (Mo. banc 1985); *In re Mentraup*, 665 S.W.2d 324 (Mo. banc 1984); *In re Witte*, 615 S.W.2d 421 (Mo. banc 1981), *appeal dismissed, cert. denied, Witte v. Bar Comm. of Twenty-First Judicial Court*, 454 U.S. 1025, 102 S.Ct. 559, 70 L.Ed. 469 reh'g denied, 454 U.S. 1165, 102 S.Ct. 1043, 71 L.Ed.2d 323 (1982); *In re Robison*, 519 S.W.2d 1 (Mo. banc 1975).

The respondent should be disbarred without invitation to return to prey on the public.