**In re Randall B. KOPF, Respondent.**

**No. 70001.**

Supreme Court of Missouri,
En Banc.

Feb. 14, 1989.

Concurring Opinion March 8, 1989.

Matthew D. Richardson, St. Louis, for informant.

Leonard J. Frankel, St. Louis, for respondent.

RENDLEN, Judge.

This is a disciplinary proceeding instituted by the Bar Committee of the Twenty–Second Judicial Circuit of Missouri against respondent, Randall B. Kopf. The Committee filed an information charging respondent with neglect in the handling of the step-parent adoption of Jessica Clair Smith

for Steven and Bette Richardson and with failure to provide the Richardsons with competent representation in violation of Missouri Supreme Court Disciplinary Rules 6–101(A)(3), 7–101(A)(1) and 7–101(A)(2), effective January 1, 1971; and of Rules 1.1, 1.3, 1.4, and 3.2 of the Missouri Rules of Professional Conduct, effective January 1, 1986.

Appointed Special Master, the Honorable Jean C. Hamilton after a plenary hearing found respondent had not failed to provide competent representation or violated Rule 1.1, but was guilty of neglect and failure to keep his clients reasonably informed, and recommended a public reprimand. Though the Master's findings, conclusions and recommendation are "necessary to this Court's orderly supervision of the bar," they are essentially advisory and this Court must examine the evidence and make all necessary factual determinations. *In re Staab*, 719 S.W.2d 780, 781 (Mo. banc 1986). On review of the record we find ourselves in agreement with the Master's recommendation and accordingly issue this public reprimand.

The essential facts are undisputed, and respondent candidly concedes they establish unnecessary delay of the legal matter entrusted to him by the Richardsons. During the summer of 1982 Steven and Bette Richardson consulted respondent, who had represented each of them in matters connected with their divorces, regarding Mr. Richardson's desire to adopt Mrs. Richardson's daughter from a previous marriage, Jessica Clair Smith. In January 1983, the Richardsons requested that respondent proceed with the adoption, paying him half of his $200 fee, and in March paid the remainder. Respondent prepared a petition for adoption and consent of parent/petitioner to adoption form which he sent to the Richardsons, who in turn promptly signed and sent them back.

On numerous occasions between March 1983 and November 1985, Bette Richardson contacted respondent by telephone to inquire about the status of the adoption. Each inquiry resulted in assurances that the necessary steps had been or would soon

be taken. On November 17, 1985, Mrs. Richardson filed a complaint with the Bar Committee for the Twenty–Second Judicial Circuit regarding the apparent lack of progress on the adoption, and a special representative of the Committee wrote to respondent requesting that he answer the Richardsons' complaint. Failing to receive a reply, the special representative sent a second letter February 5, 1986, and on February 21, 1986, respondent wrote to the special representative, admitting that he had failed to keep his clients advised of the matter and explaining that legislation to correct deficiencies in the new adoption statute was being considered by the legislature which would necessitate filing an amended petition. He promised to monitor the legislative activity and draft the amended petition as soon as the new statute became effective.

In April 1986, respondent sent the Richardsons an amended petition reflecting the new legislation which the Richardsons signed and returned to respondent, who promised to file it immediately. Respondent also told Mrs. Richardson that he would obtain a court date in June; however, he failed to do so and in July the special representative informed respondent he was proceeding to file his report with the Committee. On October 16, the day before the informal hearing, respondent filed the amended petition. The Richardsons wrote respondent a letter on May 11, 1987, terminating his representation and requesting a refund of the fees that had been paid. Respondent returned the Richardsons' money on June 15; on June 19 a formal hearing was held before the Committee and the Information was filed November 18 of that year. Respondent subsequently learned that the adoption proceeding had been placed on the dismissal docket and immediately contacted the Richardsons to ascertain whether they had obtained new counsel. Learning they had not, respondent offered to complete the adoption at no charge. They accepted his offer and on December 18, 1987, respondent successfully brought the matter to a conclusion by obtaining a decree declaring the adoption final.

At the hearing before the Master, Mrs. Richardson testified that she had no complaint concerning respondent's performance other than the length of time it took to complete the adoption and stated that she was not aware of any substantial harm or real prejudice from the delay. Although her daughter indicated on a couple of occasions that she was anxious to know when the adoption would be final, any potential embarrassment to the child was minimized by registering Jessica in school under the name "Richardson," which was also the name by which her friends knew her.

Respondent testified at the hearing that he agreed there was an inordinate delay. He stated that he had personal problems beginning with his initial separation from his wife in the Fall of 1982, when the Richardsons first approached him regarding the adoption. Respondent and his wife reconciled for a period of about six months before finally separating in September of 1983. During this period respondent experienced anxiety and depression and had difficulty concentrating and remembering things. He obtained psychiatric help and began a treatment program that included medication and counseling; however, in 1984 and for most of 1985 respondent discontinued the treatment. He resumed treatment in late 1985 or early 1986 and his medication dosage was increased at that time. Respondent adduced a letter from his psychiatrist which in large measure corroborates respondent's description of his condition and treatment and which indicates that respondent has continued to improve. Respondent also told of his recent remarriage and expressed a belief that his personal life is now under control.

During the time in question, respondent maintained approximately 100–150 active case files at a time, many of which were minor civil matters involving small fees. In September 1986 respondent found it necessary to take over, in addition to his normal case load, a number of files that had been assigned to an associate who left the firm. He testified that since those days office conditions have improved substantially and he is now able to keep abreast his workload. One of his partners testified at the hearing and corroborated respondent's account of the law practice and office improvements.

We agree with the Master's conclusion that there was no evidence to indicate that respondent failed to provide competent representation to his clients, and accordingly dismiss the Count charging violation of Rule 1.1. However, the record clearly establishes respondent's neglect of his duty to the Richardsons, which is sufficient for disciplinary action. *Matter of Maloney,* 620 S.W.2d 362 (Mo. banc 1981); *Matter of Alpers,* 574 S.W.2d 427 (Mo. banc 1978). Hence we must decide the appropriate discipline to be administered; however, before determining the sanction, we address respondent's contention that a prior letter of admonition which was adduced at the hearing before the Master should not be considered.

The letter of admonition was issued by the Bar Committee on March 12, 1985, eight months before Mrs. Richardson filed the complaint against respondent. The subject of the letter was three complaints against respondent for neglecting either to file suit or take action requested by clients. In the letter respondent was informed that "this admonition will become part of your record to be considered in connection with any future disciplinary proceedings and [the Committee] wishes to emphasize that it will not be so lenient in the future if a pattern of misconduct persists." The letter of admonition was not offered or considered for the purpose of determining guilt or innocence of the charges involved here, but was offered solely for consideration in determining an appropriate sanction. *In re Murphy,* 732 S.W.2d 895, 901 (Mo. banc 1987). The letter informed respondent it would be utilized in the future for that purpose. We find no merit to respondent's contention that he was denied his right to confrontation regarding the conduct in the letter by its admission at the hearing before the Master in this case for consideration as an aggravating factor in arriving at the discipline to be imposed.

Turning to consideration of the appropriate sanction, we are mindful that "[t]he purpose of discipline is not to punish the attorney, but to protect the public and maintain the integrity of the legal profession." *In re Littleton,* 719 S.W.2d 772, 777 (Mo. banc 1986). "This Court has held that disbarment should be reserved for those cases in which it is clear that respondent is one who should not be at Bar." *Id.* We have also stated that "[f]or isolated instances of misconduct *or clearly inappropriate acts with minimal harm to the client, a reprimand may be more appropriate.*" *In re Staab,* 719 S.W.2d at 784 (emphasis ours). Although respondent's breach of duty should not be trivialized, it is apparent from the record that the harm to the clients was minimal. Furthermore, while the evidence concerning respondent's personal difficulties does not justify his misconduct, his mental state is properly to be considered a mitigating factor. *In re Mentrup,* 665 S.W.2d 324 (Mo. banc 1984). The evidence suggests that respondent's personal situation has improved substantially and that he continues to make progress through his treatment program. While the prior letter of admonition for neglect is troubling, we nonetheless conclude, as did the Master, that public reprimand is the appropriate sanction to be employed in this case.

Respondent's misconduct is similar to that disciplined by public reprimand in a number of recent cases. *See, e.g., In re Staab,* 719 S.W.2d at 780; *In re Hardge,* 713 S.W.2d 503 (Mo. banc 1986); and *In re Elliott,* 694 S.W.2d 262 (Mo. banc 1985). The *Staab* case is particularly pertinent. There the respondent was found to have neglected the affairs of two clients and to have failed to cooperate with the Bar Committee in the subsequent disciplinary proceeding. Both instances of neglect resulted in dismissal of actions, one because of failure to prosecute and the other for failure to respond to a show cause order. In determining that public reprimand was the appropriate disciplinary measure, we noted that the respondent "did not seek personal gain by his actions" and that "there was no irreparable harm to the clients." *Id.* at 784.

The respondent here neither sought nor obtained personal gain by his actions and the harm to his clients was minimal. He eventually performed the service to his client competently and without fee and appears to have resolved in large measure the personal difficulties he encountered during the time of the misconduct. He has also taken measures to prevent caseload burden and careless management from affecting him in the future.

It is ordered that respondent be and he is hereby publicly reprimanded. Costs of this proceeding are assessed against respondent.

BILLINGS, C.J., and ROBERTSON and HIGGINS, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

DONNELLY, J., retired January 1, 1989.

COVINGTON, J., not participating because not a member of the Court when cause was submitted.

BLACKMAR, J., withdraws separate concurring opinion filed February 14, 1989, and concurs in separate opinion filed March 8, 1989.

BLACKMAR, Judge, concurring.
Filed March 8, 1989

Contrary to my initial inclination, I concur. There is much to be said in favor of Judge Welliver's position,[1] but a suspension would inconvenience the respondent's clients and, no doubt, other parties to litigations and transactions with them. *Cf. In re Staab,* 719 S.W.2d 780 (Mo. banc 1986). There is no question about the respondent's

---

1. I fully agree with Judge Welliver's support of indefinite suspension rather than suspension with leave to reapply after a specified time.

character or legal ability, and, so long as he is seeking professional help for his psychological problems, we should not demand freedom from all symptoms and manifestations. I am not persuaded that the public interest would be served by an interruption of the respondent's practice.

We have a surfeit of recent cases involving inattention to clients' business.[2] Nothing is more irritating to clients, or more damaging to the public perception of the legal profession. The respondent assures us that he recognizes his problems and that he has modified his methods of practice. His assurances are backed by his partners, who are substantial and capable lawyers. Perhaps we should have a probationary period for lawyers with the respondent's problems, with supervision and visitation by the local Bar Committee. I hope that the disciplinary authorities will give prompt attention to any similar complaints about the respondent's practice. If he does not follow through on his assurances he should not be allowed to practice law.

The principal opinion properly disposes of the respondent's contention that the prior admonition, for multiple similar offenses, may not be considered by us in determining the appropriate sanction. The admonition is similar to a "writeup" in industrial discipline. The respondent had every right to reject the admonition and submit to charges. His rights are not violated when it is considered as an aggravating circumstance, when he does the very thing he has been warned about.

I concur in the principal opinion.

WELLIVER, Judge, dissenting.

Filed Feb. 14, 1989

I respectfully dissent. The policy underlying attorney discipline in Missouri is to protect the public, not to pamper lawyers. The only way the public can be protected from conduct such as respondent's is to withdraw respondent's license and privilege to practice law.

Respondent and the majority opinion both urge us to accept the Master's recommendation of a public reprimand. He contends that a sanction no more severe than a public reprimand is an appropriate response to isolated instances of attorney neglect that resulted in no actual prejudice to the client. *In re Staab*, 719 S.W.2d 780, 784 (Mo. banc 1986). Respondent relies on cases in which a public reprimand has been deemed a sufficient punishment for acts similar to those committed by respondent. *In re Staab*, 719 S.W.2d 780 (Mo. banc 1986); *In re Hardge*, 713 S.W.2d 503 (Mo. banc 1986); *Matter of Colson*, 632 S.W.2d 470 (Mo. banc 1982); *Matter of Maloney*, 620 S.W.2d 362 (Mo. banc 1981).

Mrs. Richardson testified that her daughter suffered some anxiety from the delay in completing the adoption and that her husband was prevented from becoming a beneficiary on Jessica's life insurance policy but that no real harm was caused by the delay. True, the parties may say that no one has been seriously hurt but who can say what effect there may be on the life of the adoptee who hangs in family and parental limbo for four of the most formative years of his or her life. There is no kind of case where procrastination has the potential to do more harm. Respondent contends that there are a number of mitigating circumstances that should be considered in deciding the appropriate sanction. Respondent testified that he was having emotional problems due to his marital relationship which ended in divorce. He claims that this problem has been resolved because he has recently remarried. Respondent has also been under the care of a psychiatrist.

The majority's recommendation of a public reprimand raises a number of questions in this case. Respondent was given a private reprimand in the form of the letter of admonition, which respondent accepted in accordance with terms of Rule 5.12. This admonition or reprimand was given on March 12, 1985. This case had come to respondent in January 1983 and still did not reach resolution until four years later. If

---

**2.** *See, e.g., In re Dorsey*, 731 S.W.2d 252 (Mo. banc 1987); *In re Staab*, 719 S.W.2d 780 (Mo. banc 1986); *In re Hardge*, 713 S.W.2d 503 (Mo. banc 1986); *In re Elliott*, 694 S.W.2d 262 (Mo. banc 1985).

the first reprimand was ineffective to change respondent's manner of handling his law business, why should a second reprimand be expected to be more effective?

Following what has become in our cases the classic analysis of discipline, there would remain for consideration suspension or disbarment. A limited number of prior cases have suspended for a fixed or specified period of time.[1] In this case the failure of the prior admonition or reprimand to change respondent's manner of handling his business is the only evidence before us as to his present ability to handle law business for the public. We have no idea when or if this has or will change.

The respondent was under medical treatment for his personal problems before and at the time of the prior admonition or reprimand. The recent medical report tells us only that:

Mr. Randall Kopf has been under my care for treatment of depression from October 8th, 1982 to December 12th, 1983. The patient has been under my care for additional treatment from June 9th, 1986 to the present time.

The patient's treatment plan includes treatment with antidepressant medications, anxiolytic medications and stress

and behavioral management conducted on an outpatient basis.

Under this treatment plan there has been some improvement in the patient's symptoms of anxiety and depression and he continues under therapy.

The patient's symptoms of low mood, concentration, memory function, efficiency, insomnia and tearfulness have continued to improve.

We have no medical proof he is cured.

This Court has no basis for speculating as to when a medical reevaluation should or will be done. In this same connection, respondent's partners testified that certain steps had been taken to lighten respondent's load in the office. This testimony did not reach the level of saying that respondent's manner of handling his work had really changed. The burden is on respondent to show and prove his qualifications to be privileged to engage in the practice of law. Rule 8.14.[2] There being no basis for a suspension for a specified period of time, our next consideration is suspension for an indefinite period of time.

In the past our cases have gone all over the place on the question of what conduct merits "indefinite suspension" and what merits "disbarment or removal."[3] There

---

**1.** One difficulty with the suspension for a specified period of time is that it smacks of punishment as opposed to protection of the public.

**2.** **Rule 8.14. Burden on Applicants**
The practice of law in this State is a privilege. The burden of demonstrating that the requirements of this Rule have been met shall be upon the applicants.

**3.** *Compare, In re Adelman,* 734 S.W.2d 509 (Mo. banc 1987) (failure to pay over money collected for client and negligent handling of client's stock transfers warranted indefinite suspension); *In re Littleton,* 719 S.W.2d 772 (Mo. banc 1986) (improper sexual advances toward client and retaining as legal fee money accepted to pay client's bond warranted indefinite suspension); *In re Lechner,* 715 S.W.2d 257 (Mo. banc 1986) (failure to turn over claim files in personal injury action to subsequent counsel, despite being notified of termination of employment and receiving written request for files, failing to take necessary steps to obtain entry of decree of dissolution and to respond to client's pertinent inquiries, and failure to pay sums due United States in another personal injury action warranted disbarment); *Matter of Mendell,* 693 S.W.

2d 76 (Mo. banc 1985) (misappropriation of client's funds received in settlement of personal injury case warranted disbarment); *In re Sabath,* 662 S.W.2d 511 (Mo. banc 1984) (series of problems with clients compounded by severe personal problems, in absence of evidence of dishonorable conduct or of seeking self-enrichment at expense of others, warranted indefinite suspension); *In re Lang,* 641 S.W.2d 77 (Mo. banc 1982) (acceptance of employment and receipt of fee for services to be performed and subsequent failure to perform those services and failure to return the fee warranted indefinite suspension); *In re Robison,* 519 S.W.2d 1 (Mo. banc 1975) (personal use of money held in trust for the purpose of settling claim against client, in the absence of effort to make restitution, was ground for disbarment); *In re Montrey,* 511 S.W.2d 805 (Mo. banc 1974) (permitting judgment to be entered against client's insured for amount in excess of authority, failure to inform clients of facts and misrepresentation of facts, failure to separate funds of client, and failure to perfect appeal, followed by representation to client that appeal was still pending, knowing that such representations were false, warranted indefinite suspension); *In re Kueter,*

has never been a clear line of demarcation between the two. Indefinite suspension sounds softer and more palpable and certainly carries with it our inference that the Court would not be adverse to an application for reinstatement. Disbarment or removal, on the other hand, sounds harsher and more final. It certainly carries with it no inference of reconsideration or readmission.

A reading of the applicable rules and statutes suggests that there is no legal difference or distinction between the two. Rule 5.18 gives to the Court the general power to "reprimand the Respondent or suspend him from practice for an indefinite period or a time fixed in the discretion of the Court or disbar him...." Section 484.-190, RSMo 1986, says that the attorney may be "removed or supended" and Section 484.250, RSMo 1986, says that the Court shall pronounce judgment of "removal or suspension." Section 484.270, RSMo 1986, again refers to the judgment of "removal or suspension."

Our Rules are silent on the question of when a removed, disbarred or indefinitely suspended lawyer can apply for readmission to the bar. Our statutes are not. Section 484.270 speaks on the subject:

**484.270. Judgment operates as removal or suspension—reinstatement, how secured.**—Every final judgment or order of removal or suspension, made in pursuance of the provisions of this chapter by any court so authorized, shall operate, while it continues in force, as a removal or suspension from practice in all the courts of this state; provided, that any attorney or counselor at law removed from practice or suspended for a longer term than one year, on application to the supreme court or in the court in which the judgment of removal or suspension was first rendered, may be reinstated as such attorney or counselor at law, in the discretion of the court, at any time after one year from the date of such judgment of removal or suspension.

Clearly, with reference to either a judgment of "removal" which is used interchangably with and includes disbarment, or a judgment of indefinite "suspension," there is a statutory right to apply for readmission. The Court is granted the power to reinstate in either case "at any time after one year from the date of such judgment of removal or suspension." As to "indefinite suspension" and "removal or disbarment", there may be a distinction of meaning in our usual and customary use of the words, but it is a distinction with no legal difference or significance. This would seem to suggest that the Court could and should remove itself from the battle of disbarment versus suspension and return to the basic premise that the right to practice law is a privilege granted by the state. Rule 8.14. We should abandon use of the words *disbarment* or *removal* or *indefinite suspension* in our orders and more appropriately cast our orders in the form that "the license and privilege to practice law is withdrawn." The statute itself suggests to the respondents the appropriate time for making application for readmission.

In terms of our prior thinking, the facts of this case clearly mandate the minimum of an indefinite suspension. I would order respondent's license and privilege to practice law withdrawn.

501 S.W.2d 486 (Mo. banc 1973) (willfully and knowingly failing to make an income tax return warranted an indefinite suspension); *In re MacLeod,* 479 S.W.2d 443 (Mo. banc 1972) (willfully and knowingly failing to make a federal income tax return rendered attorney subject to disbarment); *In re Lurkins,* 374 S.W.2d 67 (Mo. banc 1964) (willfully and knowingly failing to make a federal income tax return warranted indefinite suspension).