**In re Harvey TESSLER, Respondent.**

**No. 70962.**

Supreme Court of Missouri,
En Banc.

Feb. 13, 1990.

Robert E. Britt, Clayton, for informant.

Earle B. Leadlove, St. Louis, for respondent.

## ORIGINAL DISCIPLINARY PROCEEDING

RENDLEN, Judge.

This disciplinary proceeding was instituted by the Bar Committee of the Twenty-first Judicial Circuit, which, on formal hearing, found probable cause to believe respondent was guilty of professional misconduct. The Committee then filed its information charging violation of Missouri Supreme Court Rule 4, Disciplinary Rules 1–102(A)(5) and (6), 6–101(A)(3), 7–101(A)(1), (2), and (3), and 9–102(C)(4).[1] Appointed by the Court as Special Master, the Honorable Robert H. Dierker, Jr. made findings of fact and recommended that respondent be suspended from the practice of law for one year and that his readmission to practice be conditioned upon refunding $750 to his client, Willard Hasselbring. Though not bound by the Master's findings and cognizant that we may ultimately determine the facts, *In re Vails*, 768 S.W.2d 78, 79 (Mo. banc 1989), we agree in most part with the findings and recommendations.

### Donna Rogers

Donna Rogers retained respondent to represent her on a claim of employment discrimination, and he commenced an action with the Equal Employment Opportunity Commission in November 1981. Respondent represented Rogers at two fact-finding conferences, and in March 1982 she paid him $500 and agreed further to pay 28% of any recovery from her employer. However, the EEOC, unable to resolve the charge, issued a right to sue letter, triggering a ninety-day period in which to file suit. Admittedly aware of the letter, respondent promised to prepare and file an action, but in spite of repeated calls from Rogers and constant assurances that suit had been commenced, respondent failed to proceed as promised. Respondent informed his client that he had referred the case to another attorney for filing, but later, when the statute of limitations had run, admitted the action had not been filed.

Ms. Rogers lodged a complaint with the Grievance Committee of the Bar Association of Metropolitan St. Louis in February 1983, and thereafter consulted another attorney who obtained a $23,756 default judgment against respondent in an action for legal malpractice on April 26, 1984. Respondent paid $2000 on the judgment over a period of several years, and though he initially agreed to a settlement of $6000, this compromise collapsed, and his counsel eventually negotiated a settlement by which Rogers released her claims and accepted $12,000 in satisfaction of the default judgment.

### Willard Hasselbring

In a somewhat similar situation, Willard J. Hasselbring retained respondent in June 1984 to represent him in an employment discrimination claim. Respondent drafted Hasselbring's request for a service letter and forwarded it with an attorney employment contract, which Hasselbring signed and returned, together with a copy of an "attorney new matter memo" written by respondent and retained for his case file. By two installments, Hasselbring paid respondent an agreed fee of $750, and respondent sent Hasselbring a memo on August 30, 1984, asking if he was ready to proceed with the case; the client stated that he was. However, a misunderstanding arose as to who would file the initial claim with the EEOC; Hasselbring assumed respondent would attend to the filing, but respondent testified that this was to be done by Hasselbring, and there is no dispute that he had advised the client his claim must be filed by November 16. Hasselbring wrote respondent on October 30 inquiring what had been done on the case and enclosed certain employment records relevant to the suit. He then telephoned respondent on Friday, November 15, 1984, to clarify the situation, and at respondent's suggestion came to the office on Monday, November 18, where respondent assisted Hasselbring in preparing and filing the claim, having obtained from the EEOC an appropriate extension of time. Respondent

---

1. The numbering of the last rule, previously designated as 9–102(B)(4), had been amended in 1984, but respondent was sufficiently informed of the charge against him.

then mailed a letter to the commission's office informing them that he was Hasselbring's attorney and was to be apprised of all developments in the case; a copy of this letter was sent to the client.

Hasselbring wrote respondent on December 6, 1984, and February 18, 1985, inquiring as to the status of his case. Later he testified he had received no response to these letters. On April 26, the EEOC informed Hasselbring that it would not proceed with his charge, and notified him of his right to sue. There is a dispute as to whether respondent received a copy of this letter—he testified that he did not. There is also some inconsistency in Hasselbring's testimony as to whether he forwarded a copy to respondent. Though he claimed he had, Hasselbring wrote respondent on June 15, 1985, complaining of his inaction and requesting a refund of the retainer; in that letter he stated, "I don;t (sic) know if you know it or not, but the EEOC allowed that I had no claim against them." Hasselbring conceded this would indicate he had not sent respondent a copy of the commission's letter.

There is also a conflict in the testimony concerning what occurred thereafter. Hasselbring testified he visited respondent in his office sometime in the late summer or fall of 1985 to demand a refund, and respondent stated he would "get right on" the matter, but respondent testified he recalled no such meeting. However, the record contains a letter from respondent to the Secretary of State's office dated August 21, 1985, requesting a corporate name search on Hasselbring's former employer, though respondent's testimony suggested that perhaps this was performed in August of 1984.

In any event, during December 1985 Hasselbring complained to the Bar Association of Metropolitan St. Louis and secured other counsel, who demanded a refund of the retainer fee on December 19 of that year. There is no evidence indicating respondent returned the fee, and Hasselbring testified that throughout the course of the representation respondent displayed a persistent failure to respond to letters and telephone calls.

### Conclusions

We find respondent in his dealings with each of these clients neglected legal matters entrusted to him, DR 6–101(A)(3), failed to seek the lawful objectives of his client through reasonably available means, DR 7–101(A)(1), and failed to carry out contracts of employment. DR 7–101(A)(2). *See In re Vails*, 768 S.W.2d at 79. Further, respondent prejudiced or damaged his clients in the course of the professional relationship, DR 7–101(A)(3), for the statute of limitations expired on Donna Rogers' claim, and in the case of Willard Hasselbring, *during the time of respondent's inaction key witnesses either died or were no longer employed by the company.* *See In re Hardge*, 713 S.W.2d 503, 505 (Mo. banc 1986).

### Tena Brown

■ Tena Brown, a resident of Washington, D.C., retained respondent to represent her in a personal injury claim arising from a Missouri auto accident and agreed to a $4500 settlement, authorizing respondent to endorse her name on any settlement draft. Respondent mailed the settlement agreement for her signature on November 6, 1984, stating that he had deposited the settlement draft in his trust account and it "should be available for distribution in about two weeks." After Brown promptly executed and returned the release, she attempted to contact him on two occasions and respondent stated on December 26 that he would mail her a check for $3000 (the settlement payment minus his fee) as agreed by the parties.

The next day, Tena Brown attempted to reach respondent by phone to request payment of her money. She was unable to contact respondent that day but tried again on January 3, 1985. He called back January 7 to obtain her bank account number and when the funds did not arrive, she called respondent's office on January 9, stating she would file a complaint with the Missouri Bar, and on January 10 respon-

dent sent by ordinary mail a check drawn on his trust account at Missouri Savings. Brown's bank notified her sometime later that the check had cleared and she proceeded to draw on her account, but on January 22 she was advised the check had been dishonored for insufficient funds. The bank attempted to reclear the check and assured Brown she could write checks on the account, but the check was again dishonored, and numerous checks written by Brown in reliance on the presumed deposit were in turn dishonored, resulting in bank charges to her between $300 and $500, though no documentary evidence supporting these charges was adduced. The record indicates the balance in respondent's account at Missouri Savings fell slightly below $3000 during this period. Respondent also maintained a trust account at Brentwood Bank and the evidence demonstrates that the balance in this account, plus the balance in his trust account at Missouri Savings, would have exceeded $3000, but there is no evidence that the proceeds of Ms. Brown's settlement check were deposited in any account other than Missouri Savings. Significantly, there is no evidence that the proceeds were put to any inappropriate personal use by respondent. On February 11, respondent wire-transferred the funds from his account at Boatmen's Bank (apparently a personal account) to Brown's bank, making good the $3000 obligation. Brown advised respondent of her insufficient funds charges, and although he agreed to reimburse her, he has failed so to do.

### Carol Breese

Carol Breese, a California resident, employed respondent in the autumn of 1984 to collect child support due her under a prior decree of dissolution. By December 1984, Ms. Breese had sent respondent $350 in payment for his services, and after respondent advanced expenses for sheriff's fees and related costs, he obtained $730.67 by way of garnishment. Respondent informed Ms. Breese that he had obtained $750 through the garnishment, and though her ex-husband filed a motion to quash the garnishment, the motion was later with-

drawn. The clerk of the circuit court in St. Louis County paid the proceeds of the garnishment and respondent deposited the $730.67 in his trust account at Missouri Savings on March 1, 1985. Ms. Breese phoned respondent requesting payment of her money but when she failed to receive the funds, she complained by letter to the Grievance Committee of the Bar Association of Metropolitan St. Louis on June 29, 1985. The evidence indicates that the balance of respondent's trust account at Missouri Savings fell below $730.67 on several occasions during the summer of 1985, though it appears respondent would have had sufficient funds to draw such a check on his account at Brentwood Bank. Respondent sent Ms. Breese a check for payment in full drawn on the Missouri Savings account on August 28, 1985. Again, there is no evidence that the proceeds were put to any inappropriate personal use.

### Conclusions

In light of respondent's delay in returning the funds and his failure to keep a sufficient balance in his trust account to pay his obligations, we find that a preponderance of the evidence supports the conclusion that respondent has failed to "[p]romptly pay or deliver to the client as requested by the client the funds ... in the possession of the lawyer that the client is entitled to receive," DR 9–102(C)(4), as charged in the information. *See In re Elliott*, 694 S.W.2d 262, 263–64 (Mo. banc 1985). As this Court has previously held, "[t]he failure to pay over money collected for a client is a serious offense." *In re Adelman*, 734 S.W.2d 509, 511 (Mo. banc 1987).

### Failure to Cooperate

■ The information also charges respondent with engaging in "conduct that is prejudicial to the administration of justice," DR 1–102(A)(5), and engaging in "other conduct that adversely reflects on his fitness to practice law," DR 1–102(A)(6), in that respondent failed to cooperate with the bar committee in its investigation. The committee's investigator for the complaint

of Donna Rogers wrote respondent on March 17, 1983, and requested a response, but receiving none and unable to reach respondent by phone, again wrote respondent on June 24; respondent's counsel finally replied to the latter correspondence. In regard to the complaint of Carol Breese, the investigator was able to contact respondent, who vowed to remit Ms. Breese's funds and submit documents concerning his actions in the matter, and though respondent eventually remitted the funds as discussed above, he did not provide the investigator with the promised documents. Particularly egregious is respondent's failure to answer the letters of Mr. Charles Shepherd, investigator for the complaints of Tena Brown and Willard Hasselbring. These letters specifically requested a written response, and even though respondent called Mr. Shepherd's office and left a message, no other response was forthcoming.

This Court has previously noted that failure to respond to the investigating committee's efforts may constitute a violation of the cited disciplinary rules, *In re Staab*, 719 S.W.2d 780, 783–84 (Mo. banc 1986), and as in *Staab* we are particularly persuaded not by the isolated instances of neglect, but by the pattern of respondent's failure to cooperate with the work of the investigating committee. Therefore we find by a preponderance of the evidence that respondent has engaged in "conduct that is prejudicial to the administration of justice," DR 1–102(A)(5), and "conduct that adversely reflects on his fitness to practice law." DR 1–102(A)(6). *See In re Vails*, 768 S.W.2d at 80; *In re Forge*, 747 S.W.2d 141, 144–45 (Mo. banc 1988).

### Sanctions

In determining the sanction to be imposed, we are mindful that "the primary purpose of discipline is not to punish the attorney but to protect the public and maintain the integrity of the legal profession." *In re Vails*, 768 S.W.2d at 80–81. We hold that the intermediate sanction of suspension is proper in this case, for although respondent is not manifestly unfit to practice law, the gravity and number of the complaints proven against him suggest

that he should be removed from the bar for a limited time. In so holding, we have considered respondent's emotional and mental state as mitigating factors. *See In re Kopf*, 767 S.W.2d 20, 23 (Mo. banc 1989). Respondent testified convincingly that during the time of the enumerated offenses he suffered severe stress from marital problems, culminating in a divorce, and that he not only sought professional help through marital counseling, but it became necessary to be treated in psychotherapy. Respondent further testified that he is now better able to handle stress and related problems.

It is hereby ordered that respondent be indefinitely suspended from the practice of law with leave to apply for reinstatement at the end of six months. The Advisory Committee shall file its Rule 5.09 report with this Court within sixty days of receiving a perfected application for reinstatement. Costs of this proceeding are assessed against respondent.

All concur.